599 A.2d 230

**Nizar N. OWEIDA**

v.

**The TRIBUNE–REVIEW PUBLISHING COMPANY, Richard M. Scaife, William T. Dymond, Robert J. Broderick and Richard Gazarik.**

Superior Court of Pennsylvania.

Argued April 18, 1991.

Filed Nov. 18, 1991.

114

Susan A. Yohe, Pittsburgh, for appellants.

Robert W. Doty, Pittsburgh, for appellee.

Before McEWEN, DEL SOLE and HESTER, JJ.

McEWEN, Judge:

This libel action was commenced by appellee's decedent, Nizar N. Oweida, M.D. (hereinafter "appellee")[1], following publication in the *Sunday Tribune–Review* and *The Sunday Tribune*, two newspapers of general circulation in Westmoreland County, of essentially identical articles reporting that serious charges of medical malpractice had been set forth in a civil complaint filed against Dr. Oweida by his former patient, Bonnie Filabaum, and her husband. Dr. Oweida sought compensatory and punitive damages from appellants[2] based upon their respective roles in publishing the articles, which appellee maintained were false, defamatory and beyond the scope of the fair report privi-

1. Appellee Nizar N. Oweida died on September 18, 1988.

2. Appellant Tribune–Review Publishing Company is the publisher of the Sunday Tribune–Review, while appellant Richard M. Scaife is publisher of the Sunday Tribune. Appellant William T. Dymond is the editor of the Sunday Tribune–Review and appellant Robert J. Broderick is editor of the Sunday Tribune. Appellant Richard Gazarik is the author of the article at issue.

lege. Following a trial before a jury during which neither appellant Richard M. Scaife, publisher of the Sunday Tribune, nor Bonnie Filabaum, the plaintiff in the medical malpractice action, testified, the jury awarded appellee $100,000.00 in compensatory damages and $100,000.00 in punitive damages.[3] Delay damages in the amount of $47,-480.14 were subsequently awarded by the trial court on motion of appellee. This appeal was taken from the judgment entered on the verdict as molded by the court.

Appellants have presented the following arguments in support of their request for judgment n.o.v. or a new trial:

I. News articles which restated the allegations of a lawsuit were protected by the fair report privilege because they were not overly embellished and did not contain independently defamatory material.

II. An instruction to the jury that not contacting Oweida prior to publication, without more, will support a finding that the fair report privilege was abused, was erroneous.

III. An award of punitive damages cannot be supported in the absence of proof, by clear and convincing evidence, that the articles were published with a serious doubt as to their truth.

IV. The instruction that the jury could infer actual malice from clear departures from accepted journalistic standards was erroneous.

V. Scaife could not be liable for defamation because he did not personally participate in the publications.

VI. It was error to instruct the jury that falsity could be established by a fair preponderance of the evidence, and plaintiff did not discharge his burden to prove falsity by his self-serving assertion that he had treated his patient competently.

VII. It was error to instruct the jury, as a matter of law, that one statement in the articles, although correctly

3. Punitive damages of $50,000.00 were awarded in favor of appellee and against The Tribune–Review Publishing Company. Punitive damages in the same amount were also awarded in favor of appellee and against Richard M. Scaife.

reported, was false, without further instructing how the defense of the fair report privilege related to the issue of falsity.

VIII. It was error to charge the jury that it could draw an adverse inference from the failure to call a witness equally available to both sides.

IX. The award of Rule 238 delay damages was improper in a defamation action and where plaintiff caused at least part of the delay.

Section 8343(a) of the Judicial Code provides that in an action for defamation, the plaintiff has the burden of proving:

(1) The defamatory character of the communication.

(2) Its publication by the defendant.

(3) Its application to the plaintiff.

(4) The understanding by the recipient of its defamatory meaning.

(5) The understanding by the recipient of it as intended to be applied to the plaintiff.

(6) Special harm resulting to the plaintiff from its publication.

(7) *Abuse of a conditionally privileged occasion.*

42 Pa.C.S. § 8343(a) (emphasis supplied). The defendant has the burden of proving, when relevant to the defense:

(1) The truth of the defamatory communication.

(2) The privileged character of the occasion on which it was published.

(3) The character of the subject matter of defamatory comment as of public concern.

42 Pa.C.S. § 8343(b).

Appellee, in his complaint and at trial, alleged that the articles were "sensationalized accounts" which falsely implied, *inter alia,* that Bonnie Filabaum had been mistreated and misdiagnosed by appellee and had been incorrectly informed that she suffered from terminal cancer. Appellee contended that the articles "contained numerous other false

and defamatory statements reflecting upon Dr. Oweida's character and competency purportedly directly attributed to one Bonnie J. Filabaum which also were false, scandalous, malicious, defamatory and libelous." (Appellee's Complaint, Paragraph 17). Appellants contended that the truth or falsity of the allegations concerning the treatment provided by appellee to Filabaum were irrelevant as appellants enjoyed a qualified privilege to report the allegations of the complaint, a privilege which appellants contended they had not abused.[4]

"Although Pennsylvania law affords absolute immunity for defamatory statements contained in pleadings, if relevant to the proceeding in which they are made, *Greenberg v. Aetna Insurance Co.*, 427 Pa. 511, 235 A.2d 576 (1967), *cert. denied*, 392 U.S. 907, 88 S.Ct. 2063, 20 L.Ed.2d 1366 (1968), statements about them made outside the judicial proceedings are subject to a qualified privilege only; the burden is on the plaintiff to show that defendant abused its privilege." *Denenberg v. American Family Corp. of Columbus, Ga.*, 566 F.Supp. 1242, 1254 n. 12 (E.D.Pa.1983). *Accord: Rushford v. New Yorker Magazine, Inc.*, 846 F.2d 249, 254 (4th Cir.1988); *Medico v. Time, Inc.*, 643 F.2d 134, 146 (3rd Cir.), *cert. denied*, 454 U.S. 836, 102 S.Ct. 139, 70 L.Ed.2d 116 (1981); *Williams v. WCAU–TV*, 555 F.Supp. 198, 201 (E.D.Pa.1983); *Hanish v. Westinghouse Broadcasting Co.*, 487 F.Supp. 397, 402 (E.D.Pa.1980).

"The Pennsylvania Supreme Court has recognized that '[i]f the ... account is fair, accurate and complete, and not published solely for the purpose of causing harm to the person defamed, it is privileged and no responsibility attaches, even though information contained therein is false or inaccurate.'" *Lal v. CBS, Inc.*, 726 F.2d 97, 99 (3rd Cir.1984) *quoting Sciandra v. Lynett*, 409 Pa. 595, 600, 187 A.2d 586, 588–589 (1963).

The fair report privilege developed as an exception to the common law rule that the republisher of a defamation

**4.** Appellants argued, in the alternative, that the essential allegations of the article were true.

was subject to liability similar to that risked by the original defamer. Pennsylvania had adopted the republication rule by the turn of the century, and no case brought to our attention suggests that Pennsylvania has abandoned it. With this rule, the law indulged the fiction that the republisher of a defamatory statement "adopted" the statement as his own. The common law regime created special problems for the press. When a newspaper published a newsworthy account of one person's defamation of another, it was by virtue of the republication rule, charged with publication of the underlying defamation. Thus, although the common law exonerated one who published a defamation as long as the statement was true, a newspaper in these circumstances traditionally could avail itself of the truth defense only if the truth of the underlying defamation were established.

To ameliorate the chilling effect on the reporting of newsworthy events occasioned by the combined effect of the republication rule and the truth defense, the law has long recognized a privilege for the press to publish accounts of official proceedings or reports even when these contain defamatory statements. So long as the account presents a fair and accurate summary of the proceedings the law abandons the assumption that the reporter adopts the defamatory remarks as his own.

*Medico v. Time, Inc.,* 643 F.2d 134, 137–138 (3rd Cir.), *cert. denied,* 454 U.S. 836, 102 S.Ct. 139, 70 L.Ed.2d 116 (1981) (footnotes omitted). *See also: Schiavone Construction Co. v. Time, Inc.,* 847 F.2d 1069, 1085 (3rd Cir.1988).

■ The distinguished Common Pleas Court Judge Raymond L. Scheib, in ruling upon preliminary objections, correctly held that, as a matter of law, the articles at issue were subject to the "fair report" qualified privilege since the subject matter was a civil complaint filed in a judicial proceeding involving issues of public concern.[5] The ques-

5. Since the parties have not raised before this Court the issue of whether the fair report privilege applies to pleadings which have not yet been the subject of judicial action, we express *no* opinion on the

tion of the applicability of the privilege having been determined prior to trial, the issues to be submitted to the jurors for their determination included:

Whether the appellants had abused their qualified privilege by publishing articles which were not accurate, complete, and fair accounts of the civil complaint.

If the appellants had lost the qualified privilege through abuse, whether the allegations of negligence on the part of Dr. Oweida and the harm suffered by the Filabaums as recounted in the articles were false.

Whether the appellants had published the articles in spite of serious doubts as to the truth of the material contained therein, i.e., whether the articles were published with actual malice.

As observed by Judge Scheib, the question of whether the fair report privilege was abused was a difficult issue, not easily resolved. Section 611 of the Restatement (Second) of Torts provides that a report of a judicial proceeding is privileged if it is "accurate and complete or a fair abridgement of the occurrence reported." Comment f explains:

Not only must the report be accurate, but it must be fair. Even a report that is accurate so far as it goes may be so edited and deleted as to misrepresent the proceeding and thus be misleading. Thus, although it is unnecessary that the report be exhaustive and complete, it is necessary that nothing be omitted or misplaced in such a manner as to convey an erroneous impression to those who hear or read it.... The fact that the report of one side of a trial is not as complete as that of the other is a factor to be considered in determining whether the report, as a whole, is unfair.

Restatement (Second) of Torts § 611, comment f (1977).

 Appellants contend that the trial court erred in denying their motion for judgment n.o.v. based upon the fair report privilege. While the question of whether appellants

subject. *Cf. Medico v. Time, Inc., supra,* 643 F.2d at 140 n. 21; *Hanish v. Westinghouse Broadcasting Co.,* 487 F.Supp. 397, 401–402 (E.D.Pa. 1980).

abused the fair report privilege is a close one, we believe that the trial court properly rejected the motion for judgment n.o.v. "The burden is upon the defendant in the first instance to establish the existence of a privileged occasion. *Medico v. Time, Inc.,* 643 F.2d 134, 146 (3rd Cir.), *cert. denied,* 454 U.S. 836, 102 S.Ct. 139, 70 L.Ed.2d 116 (1981); *McAndrew v. Scranton Republican Pub. Co.,* 364 Pa. 504, 575, 72 A.2d 780, 785 (1950); *Vitteck v. Washington Broadcasting Co., Inc.,* 256 Pa.Super. 427, 434, 389 A.2d 1197, 1201 (1978); 42 Pa.C.S. § 8343(b)." *Rutt v. Bethlehems' Globe Publishing Co.,* 335 Pa.Super. 163, 186, 484 A.2d 72, 84 (1984). It is then a matter for the trial court to determine whether "the occasion upon which the defendant published the defamatory matter gives rise to a privilege." *Restatement (Second) of Torts,* § 619(1). *See: Hanish v. Westinghouse Broadcasting Co., supra,* 487 F.Supp. at 402. "Whether a communication is conditionally privileged is a question for the court and whether that privilege is abused is a question for the jury." *Bargerstock v. Washington Greene Community Action Corp.,* 397 Pa.Super. 403, 411, 580 A.2d 361, 364 (1990). Once the existence of the privilege is established, the burden then shifts to the plaintiff to establish an abuse of that privilege in accordance with 42 Pa.C.S. § 8343(a)(7).

Appellee sought to establish the abuse of the privilege based upon the manner in which the article presented the allegations contained in the complaint and the inclusion in the articles of statements made by Bonnie Filabaum regarding Dr. Oweida's care and treatment. Adequate consideration of the grievance of appellee can only follow a recitation of the allegations contained in the complaint and those provided by the articles. The relevant provisions of the complaint contained the following allegations:

 \* \* \* \* \* \*

3. From on or about prior to 1969 until on or about April 22, 1981, plaintiffs were patients of defendant and

throughout said period of time defendant was and held himself out to be their doctor.

\* \* \* \* \* \*

5. Plaintiffs are the natural parents of two children; at all times material they wished to have additional children.

\* \* \* \* \* \*

7. Attached hereto and designated as Exhibit "A" is a photocopy of a list of dates of admission and dates of discharge of plaintiff from a certain hospital in Westmoreland County, Pennsylvania, to which wife plaintiff was admitted under the care of defendant, for care, treatment, and surgery upon her by defendant as set forth in Exhibit "A".

8. On various occasions during the in-patient admissions of March, 1969, and May, 1970, and on various occasions subsequent thereto, defendant informed plaintiff that she was suffering from cancer.

9. At all times material, while plaintiff remained under the care of defendant, defendant informed her, and defendant caused her to believe, that the care, treatment and surgery performed upon her, on each occasion referred to in Exhibit "A" and others, was necessary for the care and treatment of the cancer within her body.

10. In addition, defendant informed members of the immediate family of plaintiff that she was suffering from cancer, and led her to believe that she was going to die from her cancer.

11. At all times material, plaintiff believed and relied upon the statements made by defendant to her and to members of her immediate family that she was suffering from cancer and that she would die from it.

\* \* \* \* \* \*

13. On April 3, 1981, plaintiff was informed for the first time that she was not suffering from cancer and that there was no cancer within her body.

14. As a result thereof, from on and after April 3, 1981, it has been the information and belief of plaintiff that she has submitted to the following surgical procedures, and other, some subsequent to April 22, 1981, for cure and treatment of cancer which she never had and to prolong her life, which she believed was being shortened by a cancer, which she has since learned she never had: dilatation right submaxillary duct, resection of right submaxillary gland, total abdominal hysterectomy, excision left breast tumor, bilateral subcutaneous mastectomy, laparotomy, left salpingo-oophorectomy, replacement of left breast prosthesis.

15. She is informed she still has her right ovary.

16. In addition thereto, plaintiff has undergone subsequent replacements of breast protheses, more than once.

* * * * * *

[Plaintiff alleged that defendant had been negligent in the following respects:]

f. In failing to obtain or request a consultation or consultations from a physician or physicians specializing in the care and treatment of plaintiff's condition.

g. In failing to obtain or request a consultation from a physician specializing in the care and treatment of cancer.

h. In failing to do required diagnostic procedures before cutting and mutilating plaintiff.

i. In failing to observe and in ignoring specific symptoms exhibited by plaintiff.

j. In performing contraindicated procedures or tests.

k. In using plaintiff for teaching purposes in that defendant taught others how certain surgical procedures should be performed while performing upon plaintiff some or all of the procedures referred to in Exhibit "A" attached hereto.

l. In failing to order biopsies.

m. In concealing from plaintiff facts or circumstances concerning her care, treatment, or condition.

n. In performing surgery to remove her right ovary but in not removing it.

\* \* \* \* \* \*

18. As a result of the negligence of defendant as aforesaid, plaintiff was bruised and battered in and about her person; she was mutilated in and about her body; she sustained much shock and injury to her nerves and nervous system; she sustained and continues to sustain and suffer much mental, emotional, and physical pain, suffering and inconvenience, all of which may be permanent and continuing in nature and character; she incurred medical and hospital expenses for care and treatment for cancer she did not have; she is unable to bear children and she had always wanted to have more than two children; at the direction of defendant and upon the advice of defendant, plaintiff moved her two children away from her home into the home of members of her family in another state, because of the belief given her by defendant that she could not care for them and that she was dying. All of the foregoing may be permanent.

\* \* \* \* \* \*

33. During the year 1972, the exact day and month of which is presently unknown, defendant, who had earlier in time delivered plaintiff's [William J. Filabaum] wife's second child, informed plaintiff that if his wife were to carry another baby, that she could die.

34. Defendant suggested and recommended that plaintiff undergo a vasectomy so that he would not impregnate his wife.

35. During the year 1972, plaintiff followed the suggestion and recommendation of defendant that he undergo a vasectomy and defendant did at said time perform upon plaintiff a vasectomy.

36. On April 3, 1981, plaintiff was informed and therefore learned that impregnation of his wife in 1972 or thereafter would not have been harmful to her, and that his wife was not suffering from cancer.

37. As a result thereof, plaintiff submitted to a surgical procedure, i.e. vasectomy, which rendered him incapable of fathering additional children.

* * * * * *

It should be noted at the outset of the recitation of the articles that the articles published by the appellants concerning the allegations of the complaint were essentially identical to one another. The passages appearing in brackets were included in the Sunday Tribune Review [6] article but not in the text of the Sunday Tribune article [7]:

In 1969, a doctor told Bonnie Filabaum of New Kensington that she had cancer and that an operation was necessary to save her life.

When she returned to her physician several months after the surgery, he told her the cancer had spread and more operations would be necessary.

"I was told I had a neck tumor," she said. "So they removed my salivary glands. Every time I went to the doctor, I had another spot in my body. I was told I was going to die."

Over the years, Mrs. Filabaum underwent 11 operations that resulted in the removal of both of her breasts and her reproductive organs. The surgery left her scarred to the point where it was painful for her to even look in the mirror.

[Prior to her hysterectomy], her physician advised her husband, William, to have a vasectomy because he told Filabaum that if his wife became pregnant, she could die. They had two children and hoped to have more. But her husband didn't want to risk his wife's life so he went ahead with the procedure.

Several times she went to the hospital where her doctor told her she was going to die. The physical and mental

---

6. The Sunday Tribune Review article was headlined: "Cancer 'Victim' Sues Surgeon".

7. The Sunday Tribune article was headlined: "11 OPERATIONS ... But She Didn't Have Cancer".

anguish of thinking about death and leaving her two children motherless was more than she could bear.

"Everybody was waiting for me to die," she said.

Then last April, Mrs. Filabaum learned a shocking discovery.

She never had cancer.

The operations, the pain, the fear of death were all for nothing.

As a result of her treatment, Mrs. Filabaum has filed suit in Westmoreland County Common Pleas Court against Dr. Nizar Oweida of New Kensington charging the physician with negligence.

"I thought I was dying," she said. "All I could think of was my mother dying of cancer and leaving five kids. I thought, My God, my kids won't have me to watch over them."

Mrs. Filabaum said she was born in Los Angeles but was raised in a girls home after her mother died. She also lost a sister to cancer so when her physician told her that she had cancer, she was afraid and agreed to an operation.

After she returned to her physician for a checkup, she was told the cancer was spreading and that she was terminally ill, Mrs. Filabaum began to prepare to die. First she arranged for her mother-in-law to become a legal guardian for the children. She even moved her children to live with relatives in another state thinking she would not be able to care for them. Then she began the first of several hospital stays that were supposed to be her last.

"The last time I was in the hospital they told my husband there was no help for me. All they could do was help me be comfortable. When is it going to come, I thought. Each time I went to the hospital I thought that was it. Am I going to die now? Each time my kids came up here they thought it was going to be the last time."

Pittsburgh Attorney Mark Aronson filed the suit charging that Dr. Oweida never performed biopsies to deter-

mine if cancer cells were present in Mrs. Filabaum before he operated. The lab reports that were performed indicated no signs of cancer. He also charged that Oweida never consulted with other physicians to determine if Mrs. Filabaum really was ill. Among the other allegations raised in the lawsuit, Aronson charged that Oweida, who is on the staff at Citizens General Hospital in New Kensington, failed to inform Mrs. Filabaum of the risks, complications, and hazards of the surgery and failed to get her informed consent.

Aronson also charged that Oweida used Mrs. Filabaum as the subject of a teaching demonstration on how to do certain surgical procedures.

Oweida, Aronson also alleges, concealed facts from Mrs. Filabaum concerning her medical condition.

"As a result of the negligence of defendant ... plaintiff was bruised and battered ... she was mutilated in and about her body; she sustained much shock and injury to her nerves and nervous system; she sustained and continues to sustain and suffer much mental, emotional and physical pain ..." the suit alleges.

After being admitted to Citizens General Hospital last spring, she was transferred to West Penn Hospital in Pittsburgh because she said her physician was baffled because she was still alive.

Surgeons at West Penn told her physician they believed Mrs. Filabaum was suffering from trouble with her ovary. But Oweida told West Penn doctors that the ovary had been removed.

That's when Mrs. Filabaum said she discovered she never had cancer.

"What really hurts ... is having a hysterectomy. I wasn't even 25 years old and having my breasts removed," she said, her voice strained with emotion. "I still have a lot of pain. I still have more surgery to face. I go out of town to see doctors now because I don't trust the doctors around here."

[Her husband quit his job as a machinist after suffering a serious back injury in an auto accident. Her 11–year–old son suffered from benign brain tumors that had to be removed. Then in 1977, their home was destroyed in a fire.]

[Mrs. Filabaum says she has the scars and memories to remind her of her ordeal and worries about her daughter getting cancer someday.]

"I watch my daughter, I watch her so close. I'm so afraid after losing my mother and sister to cancer. I was so afraid it's inherited.

"It's a relief to know I don't have cancer but I don't have my body. I used to model swimsuits for Catalina when I lived in California now I couldn't model for a freak show. I'm scarred from my face to my legs."

Appellants, conceding that the complaint, and hence the articles, falsely stated that Oweida had told Filabaum she had terminal cancer, and falsely stated that Oweida had personally performed the dilatation of Filabaum's right submaxillary gland and the removal of a tumor of the left breast, correctly argue that the "truth or falsity of the underlying facts in the article do not affect the privilege so long as the story was a fair and accurate summary of the judicial proceedings." *Binder v. Triangle Publications Inc.*, 442 Pa. 319, 326, 275 A.2d 53, 57 (1971). While we agree with appellants that the truth or falsity of the allegations of the complaint is irrelevant to a determination of whether the fair report privilege had been abused, and thus forfeited, the issue for the determination of the jury was whether the privilege had been forfeited as a result of defamatory embellishments. This was clearly an issue to be resolved by the jury. *See: Biggans v. Foglietta*, 403 Pa. 510, 511, 170 A.2d 345, 346 (1961); *Lavin v. New York News Inc.*, 757 F.2d 1416, 1419 (3rd Cir.1985); *Hanish v. Westinghouse Broadcasting Co.*, 487 F.Supp. 397, 402 (E.D.Pa.1980); *Bargerstock v. Washington Greene Community Action Corp.*, *supra*, 397 Pa.Super. at 411, 580 A.2d at 364; Restatement (Second) of Torts, § 619(2).

■ The question of whether the fair report privilege has been abused has been distilled by the federal courts to a "gist" or "sting" test. "A statement is substantially accurate if its 'gist' or 'sting' is true, that is, if it produces the same effect on the mind of the recipient which the precise truth would have produced." *Williams v. WCAU-TV*, 555 F.Supp. 198, 202 (E.D.Pa.1983). The question is whether a reasonable person, comparing the complaint and the article as a whole, could conclude that the article was a fair and accurate rendition of the complaint. If the reader could conclude that the article carries with it a materially greater "sting", then the fair report privilege has been abused and is thus forfeited. *See: Lavin v. New York News, Inc., supra*, 757 F.2d at 1419–1420. "An unfair summary in the present context is one that amplifies the libelous effect that publication of the government report verbatim would have on a reader who read it carefully—that carries a 'greater sting'." *Lavin v. New York News, Inc., supra*, 757 F.2d at 1426 (Becker, J., dissenting), *quoting Brown & Williamson Tobacco Corporation v. Jacobson*, 713 F.2d 262, 271 (7th Cir.1983).

■ Our duty on appeal from an order denying a motion for judgment *non obstante veredicto* is to decide "whether there was sufficient competent evidence to sustain the verdict, granting the verdict winner ... the benefit of every favorable inference reasonably to be drawn from the evidence." *Laniecki v. Polish Army Veterans Association*, 331 Pa.Super. 413, 417, 480 A.2d 1101, 1103 (1984).

The trial judge, the eminent Judge Livingstone M. Johnson, in denying the motion for judgment n.o.v., opined:

[T]he jury may have reasonably concluded that Defendants' publication was inaccurately embellished well beyond the scope of the Fair Report Privilege. Even cursory analysis of the articles reveals that Defendants spliced together disconnected narrative, quotations and legal averments, which compartmentalize treatment, injury and legal action in such a manner as to provide a highly colored account of gross negligence, and conceal from the

reader the articles' ostensible role as a report of legal proceedings. Through the clever use of organization and structure, the Defendants rendered for the eyes of the average reader, an account which casts the significance of Filabaum's legal action not as a forum by which to prove injury or vindicate Dr. Oweida, but rather as an exercise of certainty to determine whether injuries sustained as a matter of fact could be compensated as a matter of law.

There can be little question that such a rendition of any legal complaint or proceeding falls well beyond the scope of a "fair and accurate report".

Opinion of the Trial Court, p. 11.

The trial court properly denied the motion for judgment n.o.v. under the circumstances of this case since the jury could properly find that the manner in which the facts of the complaint were reported and the absence of any qualifying language to alert readers that the complaint consisted of allegations not yet established, rendered the report unfair and inaccurate. While the truth or falsity of the allegations contained in Filabaum's complaint was irrelevant so long as the occasion of the publication enjoyed a qualified privilege, the jury could properly conclude that by failing to clearly state that the allegations of the complaint were simply unproven allegations and not established facts, appellants had forfeited their conditional privilege. *See: Time, Inc. v. Pape*, 401 U.S. 279, 292, 91 S.Ct. 633, 28 L.Ed.2d 45 (1971) ("Nothing in this opinion is to be understood as making the word 'alleged' a superfluity in published reports of information damaging to reputation."); *Purcell v. Westinghouse Broadcasting Co.*, 411 Pa. 167, 178, 191 A.2d 662, 668 (1963) ("the fault lay in breaking the egg of the extra-judicial 'investigation' and the egg of the judicial hearing into one omelet and seasoning it with comment and observations which made the parentage of either original egg impossible of ascertainment as to taste, color, shape or form"). Thus, the trial court committed neither an error of law nor an abuse of discretion in denying the motion for

judgment n.o.v. filed by the appellants. *Cf. Schiavone Construction Co. v. Time, Inc., supra.*

Appellants next argue that errors in the charge of the court necessitate the award of a new trial. We are constrained to agree. Libel cases are inherently complex. Where, as here, that complexity is enhanced by the presence of the fair report privilege, the issues become tortuous even for First Amendment jurisprudential scholars. We commend the trial judge for the painstaking care he exercised to accord to the parties a fair, as well as full, trial, for his conscientious concern is reflected throughout the entire record of the trial proceedings. Nonetheless, because the charge of the court in such a case assumes especial importance, as it is the only vehicle by which the jury can possibly apply the complex body of law to the facts, and because we conclude that certain portions of the charge did not attain this goal, a new trial must be granted.

■ The court, accepting the majority of the points for charge submitted by appellee, instructed the jury on the appellee's burden of proof as follows:

> In this defamation action, the Plaintiff bears the burden of proving that the Defendants caused the articles, that is, Plaintiff's Exhibit 1 and Plaintiff's Exhibit 2, to be published, and that the articles were false.
>
> You must find that the Plaintiff satisfied his burden of proving that the articles were false if you, the jury, believe that the articles were not true.
>
> You must find for the Defendants if you believe that the statements contained in the articles were true.
>
> If you find that the articles in question, that is, Plaintiff's Exhibit 1 and Plaintiff's Exhibit 2, were false, I instruct you as a matter of law that the articles are defamatory if they falsely ascribe to the Plaintiff conduct or character traits that would have adversely affected his fitness for the proper conduct of his profession.
>
> The articles are also defamatory if they would tend to diminish the esteem, respect, good will or confidence in

which the Plaintiff is held, or if they would tend to excite adverse, derogatory or unpleasant feelings or opinions against him.

The articles are also defamatory if they would tend to blacken the Plaintiff's reputation in his community or expose him to public hatred, contempt or ridicule or deter third persons from associating with him.

In determining whether the articles in question, Plaintiff's Exhibits 1 and Plaintiff's Exhibit 2, are defamatory, the articles must be read and understood as a whole with each word being read in the context of all other words.

The headlines of each of the articles are to be considered by you as part of the publication to determine whether the articles are defamatory.

The Defendants repeated certain statements which they attribute to other persons. When one person repeats a defamatory statement that he attributes to some other person, it is not enough for the person who repeats it merely to show that the statement was made by the other person.

The truth of any defamatory charges that were repeated by the Defendants is at issue.

Proof that some portion of the articles are substantially true does not establish the truth of the other portions of the articles or of the articles as a whole.

The test of whether the articles are defamatory is the effect which the articles are fairly calculated to produce, and the impression that the articles naturally engender in the minds of the average persons among whom the articles were intended to circulate.

You must give the words used in the articles the same signification that other people would attribute to them.

In determining whether or not the Plaintiff's treatment of Bonnie Filabaum was negligent, you are to consider only the information known to the Plaintiff and actually considered by the Plaintiff at the time he rendered such treatment.

Information not known by him and information not considered by him at the time is not relevant to the question as to whether or not his treatment was negligent, and should not be considered by you.

The law recognizes that the publication of certain matters, although defamatory, is privileged. Privileged means that one making the publication is protected from liability by the law.

A newspaper possesses a privilege to publish an account of a civil complaint, provided the account is accurate and complete or a fair summary of the substance of the underlying civil complaint.

Accordingly, so long as the articles, Plaintiff's Exhibit 1 and Plaintiff's Exhibit 2, fairly and accurately set forth the allegations contained in the civil complaint being reported, it does not matter whether the allegations in that complaint are true or false.

Fair in this sense does not necessarily mean that the articles tell all sides of the underlying dispute, but instead, means that those matters contained in the public record should be reported without substantial distortion.

The law recognizes that certain statements may be privileged. Privileged means that one making such statements may be protected from liability by the law.

The parties to a judicial proceeding and their attorneys are accorded an absolute privilege with respect to statements in that judicial proceedings.

However, a newspaper has only a qualified privilege to publish an account of those judicial proceedings, provided its report is fair, accurate and complete.

The burden is here on the Defendants to establish their right to the protection of a qualified privilege.

In order to meet the burden, the Defendants must establish by a preponderance of the evidence, first, that the articles are a report of the judicial proceedings, and second, that they are a fair, accurate and complete report.

In other words, the Defendants will be subject to liability if they are negligent in failure to do what was reasonably

necessary to insure that the report of the judicial proceeding was fair, accurate and complete.

You, the jury, may find that the Defendants abused the qualified privilege if you believe that the Defendants embellished the allegations contained in the Filabaum complaint with defamatory additions and failed to take reasonable steps to insure that the entire articles were a fair, accurate and complete report of judicial proceedings. You may also find that the Defendants abused the qualified privilege if you, the jury, believe that the Defendants' failure to attempt to contact the Plaintiff, Bonnie Filabaum, prior to publicly—strike that. Excuse me. I've misspoken.

I'll restate that.

Once again, members of the jury, you may also find that the Defendants abused the qualified privilege if you believe that the Defendants' failure to attempt to contact the Plaintiff, Nizar N. Oweida, prior to publication of the article was unreasonable.

In determining whether or not the Defendants abused a qualified privilege, you must read and consider each article; that is, Plaintiff's Exhibit 1 and Plaintiff's Exhibit 2, in their entirety.

The test is the effect the article is thoroughly calculated to produce, the impression it would naturally engender in the minds of the average persons among whom it is intended to circulate.

The words must be given by you, the jury, the same significance that other people are likely to attribute to them.

The privilege does not require that the allegations of the Filabaum complaint be set forth word for word in the article. A substantially accurate summary is all that is required.

The court in the first seventeen paragraphs of its charge never stated that the fair report privilege was applicable to the publication at issue. Rather, the court instructed the jury on general principles of libel law despite the fact that

the precise issue which the jury was initially required to determine was whether the appellants had abused the qualified privilege accorded them to publish the allegations of the Filabaum complaint.[8] Only if and after the jury found, under proper instruction from the court, that the appellants had abused and thereby forfeited the qualified privilege to report the allegations of the Filabaum complaint would the issue of the truth or falsity of the allegations of the complaint and the negligence, if any, of the appellants become a relevant inquiry. *See: Bargerstock v. Washington Greene Community Action Corp., supra,* 397 Pa.Superior Ct. at 411–412, 580 A.2d at 364–365. Certainly, it was incumbent upon the court to instruct the jury that the articles were privileged and to focus the scrutiny of the jury upon the question of whether that privilege had been abused by appellants' failure to provide a fair and accurate summary of the allegations of the complaint. The court, however, instructed the jury that they could find "that the Defendants abused the qualified privilege *if you believe* that the Defendants' *failure to attempt to contact the Plaintiff,* Nizar N. Oweida, prior to publication of the article, *was unreasonable."* [9] Since the erroneous instruction upon so vital an issue may have affected the verdict, a new trial is required.

While the need for a new trial renders the remaining assertions moot, it is prudent to address those arguments which are certain to arise on retrial, including appellants' argument that the court not only erred in submitting the issue of punitive damages to the jury in the absence of evidence to support a finding of actual malice, but erred, as well, in its instruction on actual malice.

██ Appellee in the instant case had the burden of establishing that appellants published the articles at issue with

8. As earlier recounted, the trial court, per Judge Scheib, had already properly determined as a matter of law that the fair report privilege was applicable. *See: Restatement (Second) Torts* § 619(1).

9. See and compare: *Binder v. Triangle Publications, supra,* 442 Pa. at 327, 275 A.2d at 58; *Medico v. Time, Inc., supra,* 643 F.2d at 146–147 ("How a reporter gathers his information concerning a judicial proceeding is immaterial....").

actual malice if he was to recover punitive damages. "In *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974), we held that the First Amendment restricted the damages that a private individual could obtain from a publisher for a libel that involved a matter of public concern. More specifically, we held that in these circumstances the First Amendment prohibited awards of presumed and punitive damages for false and defamatory statements, unless the plaintiff shows 'actual malice', that is, knowledge of falsity or reckless disregard for the truth." *Dun & Bradstreet v. Greenmoss Builders Inc.,* 472 U.S. 749, 751, 105 S.Ct. 2939, 86 L.Ed.2d 593 (1985). The standard of such proof is also certain.

■ "The burden of proving 'actual malice' requires the plaintiff to demonstrate with clear and convincing evidence that the defendant realized that his statement was false or that he subjectively entertained serious doubt as to the truth of his statement." *Bose Corp. v. Consumers Union of United States, Inc.,* 466 U.S. 485 at 511 n. 30, 104 S.Ct. 1949, 1965 n. 30, 80 L.Ed.2d 502, 524 n. 30 (1985).

Reckless disregard for the truth, i.e. "actual malice", " 'is not measured by whether a reasonably prudent man would have published, or would have investigated before publishing. There must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication. Publishing with such doubts shows reckless disregard for truth or falsity and demonstrates actual malice.' " *Frisk v. The News Company,* 361 Pa.Super. 536, 543, 523 A.2d 347, 350 (1986), *allo. denied,* 515 Pa. 614, 530 A.2d 867 (1987), quoting *St. Amant v. Thompson,* 390 U.S. 727, 731, 88 S.Ct. 1323, 1325, 20 L.Ed.2d 262 (1968). *Accord: Jenkins v. KYW, A Division of Group W,* 829 F.2d 403, 407 (3rd Cir.1987); *Smith v. A Pocono Country Place Property Owners Association, Inc.,* 686 F.Supp. 1053, 1059 (M.D.Pa.1987).

"Mere negligence or carelessness is *not* evidence of actual malice". *Curran v. Philadelphia Newspapers, Inc.,* 376 Pa.Super. 508, 519, 546 A.2d 639, 645 (1988) (emphasis

added). "A defendant's failure to verify his facts may constitute negligence, but does not rise to the level of actual malice. *McDowell v. Paiewonsky*, 769 F.2d 942, 951 (3rd Cir.1985). That is, while it arguably may be negligent not to check independently the veracity of information before publication, this fault does not rise to the level of actual malice." *Smith v. A Pocono Country Place Property Owners Association, Inc., supra*, 686 F.Supp. at 1061. *See also: Marcone v. Penthouse*, 754 F.2d 1072, 1089 (3rd Cir.), *cert. denied*, 474 U.S. 864, 106 S.Ct. 182, 88 L.Ed.2d 151 (1985). *Cf. Frisk v. The News Company, supra*, 361 Pa.Super. at 544, 523 A.2d at 351.

 The court charged the jury on the issue of the existence of malice and punitive damages as follows:

I've charged you on compensatory damages, and I'm now moving on to punitive damages.

If you find that the Plaintiff has established his claim and if you also find on the basis of clear and convincing evidence that the Defendants acted with reckless disregard for the truth in publishing the defamatory articles, then you may award the Plaintiff punitive damages in addition to the compensatory damages assessed.

You may find that the Defendants acted with reckless disregard for the truth if you believe on the basis of clear and convincing evidence that the Defendants published the defamatory articles with reckless disregard for whether or not the statements contained in the defamatory articles were true.

I mentioned to you that in determining whether or not the Plaintiff has carried his burden of proof as to compensatory damages, that the burden of proof test is preponderance of the evidence, and that's a balance scale and whether or not it tips ever so slightly in the Plaintiff's favor or not.

If it tips ever so slightly in the Plaintiff's favor, then he's carried his burden on preponderance of the evidence. If it remains level or tips ever so slightly in favor of the Defendant, the Plaintiff has not carried his burden.

When we speak of clear and convincing evidence, it's a different standard of evidence. It requires a greater quantum of proof, if you will.

It falls somewhere between the preponderance of the evidence standard in a civil case and the proof beyond a reasonable doubt standard which is required in a criminal case.

The greater burden of beyond a reasonable doubt, that's over in criminal court. That has nothing to do with these proceedings.

The lightest burden is preponderance of the evidence. Clear and convincing is somewhere between those two burdens, and I charge you as follows in that regard:

Clear and convincing evidence, as contrasted to the preponderance of the evidence standard, is that quantum of proof which is so clear, direct, weighty and convincing as to enable the jury to come to a clear conviction without hesitancy of the truth of the precise facts in issue.

If you find that one or more of the Defendants acted with actual malice, the punitive damages that you consider as a punishment against the Defendant or those Defendants must be reasonably related in amount to the compensatory damages you have awarded to the Plaintiff.

You may award the Plaintiff punitive damages in order to punish the Defendant for their conduct and to deter the Defendants and others from the commission of like acts.

The existence of the Defendants' reckless disregard for the truth may be shown in many ways.

As a general rule, you may consider any competent evidence which has been presented in this case, either direct or circumstantial, as well as the circumstances surrounding the publication of the articles.

Members of the jury, you may consider that the Defendants acted with reckless disregard for whether or not the statements contained in the articles were true if you, the jury, believe that the articles were the result of clear departures from accepted journalistic procedures.

You may find that the articles were the result of a clear departure from journalistic procedures if you believe that there was an utter lack of adequate pre-publication investigation, that the Defendants used wholly speculative accusations and accusatory inferences, and that the Defendants failed to utilize or employ effective editorial review.

In determining whether the Defendants acted with reckless disregard for whether or not the statements contained in the defamatory articles were true you may consider whether the Defendants had obvious reasons to question the veracity of the statements in the articles, and nonetheless, failed to further investigate the facts prior to publishing the articles.

If you believe that the articles are not in the category of hot news, that is, information that must be printed immediately or it will lose its newsworthy value, you may find that the Defendants acted with reckless disregard for the truth if you also believe that the Defendants' investigation for the articles was grossly inadequate.

In order to find that the Defendants published a defamatory communication with actual malice, you must find that such Defendants published such communication with actual knowledge that it was false, or that they made the communication even though they had serious doubts about its truth.

Actual malice is not measured by whether a reasonably prudent man would have published or would have investigated the defamatory communication.

Rather, there must be clear and convincing evidence that the individual Defendant against whom punitive damages are sought held serious doubts as to the truth of the defamatory communication.

There can be no finding of actual malice if the defamatory communication is based on information that a Defendant could reasonably believe to be accurate. I would say to the jury that whether we're using the term reckless disregard as to whether a statement is true or false

or harboring serious doubts as to whether or not a statement is true or false is essentially for your purposes the same thing.

In short, if the circumstances are sufficient that you, the jury, believe that based upon all of the circumstances, the Defendant or Defendants acted with reckless disregard as to whether or not a statement was true or not, then essentially, what you're saying is that even though the Defendant or Defendants say that they didn't have serious doubts about it, that you made a finding based on all the circumstances that they must have had serious doubts, and if you come to such a conclusion—and you're the sole judges of the facts—I'm not attempting to suggest to you in any regard whatsoever what your conclusion should be, but if you should come to such a conclusion, then punitive damages would be awardable, in that the actual malice would be present.

In short, you don't have to find that there, in fact, existed a serious doubt.

You can find that the circumstances are sufficiently enough and strong enough that in your judgment, if this is your judgment, the Defendant or Defendants must have had serious doubts about it and acted with reckless disregard as to whether it is true or not, and again, I would caution you that I'm not attempting to suggest to you in any regard what your findings should be.

I'm attempting to explain the difference between the law which refers to reckless disregard and the law which refers to serious doubt.

Essentially, it's the same thing.

N.T. 303–309.

The standard of proof here described by the trial court fell far short of the aforerecited demanding standards of proof established by the United States Supreme Court as a condition precedent to a finding of actual malice and an award of punitive damages. It was error to instruct the jury that they could find malice on the part of appellants and award appellee punitive damages based solely upon a

finding that "the articles were the result of clear departures from accepted journalistic procedures".

That error was compounded when the court proceeded to define "clear departures from journalistic procedures" by using language taken verbatim from the opinion of this Court in *Frisk v. The News Company, supra,* since the use of the language from *Frisk* in the charge in the instant case was inappropriate. In *Frisk,* the defendants, in an article published on May 4, 1979, alleged that the City Borough Council President, Richard C. Gatto, gave the Planning Commission a zoning map that had been "illegally altered to benefit borough solicitor Nick A. Frisk." Three days later, on May 7, 1979, in a subsequent article "[i]mputations of unlawful conduct on the part of Mr. Frisk and/or Mr. Gatto ... [were] reasserted even more expansively...." *Frisk v. The News Company, supra,* 361 Pa.Superior Ct. at 544, 523 A.2d at 351. It was established at trial that Frisk, on May 4, had offered the defendants proof that the accusations were false and had demanded a retraction. The defendants, however, published the second defamatory article without mention of Frisk's denials. This Court, in affirming the verdict as remitted [10] by the trial court found that:

> The publication of the May 4th and 7th articles is marked by the [sic] clear departures from acceptable journalistic procedures: (1) the utter lack of adequate pre-publication investigation; (2) the use of wholly speculative accusations and accusatory inferences; and (3) the failure to utilize or employ effective editorial review. We therefore are of the opinion that appellees have sufficiently proven that appellant must have entertained serious doubts as to the truth of its publications. Accordingly, we affirm the denial of appellant's motion for judgment n.o.v.

*Frisk v. The News Company, supra,* 361 Pa.Superior Ct. at 544, 523 A.2d at 351. Unlike the news accounts in *Frisk,*

10. The jury had awarded Mr. Frisk $100,000.00 in compensatory damages and $400,000.00 in compensatory damages to Mr. Gatto. Punitive damages were awarded to each of the appellees in the amount of $175,000.00. Both appellees remitted the punitive damage awards in excess of $50,000.00.

appellants here were simply recounting the allegations of a civil complaint, not evidence of illegal conduct allegedly uncovered by a reporter. Appellants in the instant case were subject to liability for publication of the articles at issue solely as a result of their negligent failure to clearly convey to their readers that the story concerned *allegations* contained in a civil complaint and not facts discovered in an investigation undertaken by appellants. Moreover, in *Frisk*, no conditional privilege was at issue and the defendants clearly had a duty to verify the defamatory factual allegations contained in the news articles prior to publication. Thus, the use of the language from *Frisk* in this portion of the charge to the jury served to misguide the jury during its deliberations upon the issues of malice and punitive damages.

Similarly, because a threshold issue in this case was whether the fair report conditional privilege had been abused, and because, as we have seen, appellants, so long as they fairly and accurately reported the contents of the Filabaum complaint, had no duty to investigate, it was inappropriate to instruct the jury that they could find that appellants had acted with the "actual malice" required for punitive damages if they believed the "investigation for the articles was grossly inadequate." Thus, appellant is entitled to a new trial.

While our discussion has focused upon our review of the charge and examination of the instructions upon malice and punitive damages, our study of the entire record obliges us to a further conclusion concerning punitive damages made necessary by our remand of the case for a new trial. The United States Supreme Court has repeatedly cautioned that in libel cases involving the First Amendment "an appellate court has an obligation to 'make an independent examination of the whole record' in order to make sure that 'the judgment does not constitute a forbidden intrusion on the field of free expression.'" *Bose Corp. v. Consumers Union of United States, Inc.*, 466 U.S. 485, 499, 104 S.Ct. 1949, 80 L.Ed.2d 502 (1984) quoting *New York Times Co. v. Sullivan*, 376 U.S. 254, 284–286, 84 S.Ct. 710, 11

L.Ed.2d 686 (1964). We have, of course, conducted that constitutionally mandated independent study of the entire record, *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, ——, 110 S.Ct. 2695, 2705, 111 L.Ed.2d 1 (1990), and are compelled to the conclusion that, as a matter of law, the evidence was insufficient to warrant submission of the issue of actual malice/punitive damages to the jury. *See and compare: Time, Inc. v. Pape, supra,* 401 U.S. at 290–291, 91 S.Ct. at 639–640; *Williams v. WCAU–TV,* 555 F.Supp. 198, 201 (E.D.Pa.1983); *Moran v. G. & W.H. Corson, Inc.,* 402 Pa.Super. 101, 118, 586 A.2d 416, 425 (1991). Thus, if the jury, upon retrial, finds in favor of appellee, the verdict must be limited to compensatory damages.

We believe it prudent to also address appellants' arguments concerning delay damages and the missing witness adverse inference rule since those questions will likely arise on retrial.

 The trial court instructed the jury that:

if you find that the Defendant, Richard Mellon Scaife, or Mrs. Bonnie Filabaum, who were not called as witnesses, were available to the Defendants, had special information which was relevant and that their relationship to the Defendants is such that they would ordinarily be expected to favor the Defendants, then if there is no satisfactory explanation for the Defendants' failure to call them, you may draw the inference that their testimony would have been unfavorable to the Defendants.

The trial court should not have exposed appellant to such an adverse inference insofar as concerns Mrs. Filabaum since "[s]uch an inference is only permitted where the uncalled witness is peculiarly within the reach and knowledge of only one of the parties. It may not arise where the witnesses are equally available to both parties." *Nationwide Mutual Insurance Co. v. Hassinger,* 325 Pa.Super. 484, 492, 473 A.2d 171, 175 (1984), citing *Bentivoglio v. Ralston,* 447 Pa. 24, 288 A.2d 745 (1972). Mrs. Filabaum, who had settled her medical malpractice action with Dr. Oweida for an undisclosed sum prior to the trial of the instant action, was

equally available to the appellee and had no "special relationship" with appellants. Thus, upon retrial, if Mrs. Filabaum does not testify, the jury may not be instructed to draw an adverse inference against appellants.

■■■ Nor may delay damages be added to the verdict upon retrial. Rule 238 of the Rules of Civil Procedure provides, in relevant part:

> [I]n an action seeking monetary relief for *bodily injury,* death, or property damage, damages for delay shall be added to the amount of compensatory damages ... and shall become part of the verdict....

Pa.R.C.P. 238(a)(1) (emphasis supplied).

No one free of self interest will question that there is no more pernicious behavior than libelous conduct. As this writer has stated:

> [T]he Constitution of Pennsylvania, since the very earliest days of this Commonwealth, has focused upon the intrinsic dignity of each of its citizens, and, in doing so, equated reputation as sacred as life and liberty, for as the very first section of Article I of the Constitution of 1874 proclaims:
>
> Inherent Rights of Mankind
>
> Section 1. All men are born equally free and independent, and have certain inherent and indefeasible rights, among which are those of enjoying an defending life and liberty, of acquiring, possessing, and protecting property and reputation, and of pursuing their own happiness.

Though one's property passes to others, and one's bones become dust, one's reputation remains. The shadow of the man himself disappears in death, but the shadow upon his reputation survives and survives to become history and to be cast upon his children and on to their issue. Thus, reputation is a unique attribute and, once stained, so irretrievably blemished that even punitive damages are inadequate recompense for the harm.

*Butler v. Flo–Ron Vending Co.,* 383 Pa.Super. 633, 557 A.2d 730, 742 (1989), *allo. denied,* 523 Pa. 646, 567 A.2d 650 (1989). Thus, although a libel action is one based upon a serious, if not mortal injury, it is not an action "seeking relief for bodily injury." Rather, a libel action is an action seeking relief for damage to reputation.

This Court, in *Wainauskis v. Howard Johnson Co.,* 339 Pa.Super. 266, 282, 488 A.2d 1117, 1125 (1985), held that delay damages could not properly be added to the compensatory damages award in an action for malicious prosecution since it was not an action for "damages for bodily injury." After application of the same analysis in *Temporaries, Inc. v. Krane,* 325 Pa.Super. 103, 472 A.2d 668 (1984), we held that delay damages were not available in an action for tortious interference with a contract where the compensatory damages represented lost earnings and profits. We further held in *Butler v. Flo–Ron Vending Co., supra,* 383 Pa.Superior Ct. at 653, 557 A.2d at 740, this Court held that claims for emotional injury, loss of reputation, humiliation and mental anguish did not constitute claims for "bodily injury" within the meaning of Rule 238. Consistently enough, this Court, in *Geyer v. Steinbronn,* 351 Pa.Super. 536, 506 A.2d 901 (1986), affirmed the trial court's order which had denied a motion for assessment of delay damages in a libel action. The plaintiffs in *Geyer* filed a cross appeal, and argued that "the lower court erred in denying plaintiffs' motion for assessment of damages for delay pursuant to Pa.R.C.P. No. 238." *Id.,* 351 Pa.Superior Ct. at 544, 506 A.2d at 905. This Court summarily dismissed the argument on delay damages, noting that the Court had "reviewed the record with respect to the issues raised by plaintiffs' cross-appeal and found that the opinion of the trial court, at pp. 35–44, adequately addresses these issues. We therefore affirm the trial court's denial of plaintiffs' various requests for relief." *Id.,* 351 Pa.Superior Ct. at 566, 506 A.2d at 917. Thus, while not expressly so stating, this Court in *Geyer* held that delay damages were not available in libel actions.

Moreover, as observed by the esteemed Judge John G. Brosky in his concurring opinion in *Wainauskis v. Howard*

*Johnson Co., supra,* the public policy and purposes of Rule 238 would not be achieved by making Rule 238 applicable to libel actions:

> I believe that the number of [such] actions is so small relative to the number of actions for bodily injury (of a less broadly defined type), death, or property damage that I do not believe they contribute significantly to judicial congestion and delay. Also I believe the difficulty in computing the proper amount of compensation for the type of injuries involved instantly tends to make pretrial settlement so difficult that it would make the encouragement of Rule 238 of little value. Therefore, I would decline to construe the term 'bodily injury' to encompass those injuries for which recovery is sought in a malicious prosecution action and agree with the majority that the trial court properly held that Rule 238 was inapplicable.

*Id.,* 339 Pa.Superior Ct. at 283, 488 A.2d at 1125–1126 (footnote omitted). Thus, upon retrial, delay damages may not be added to the compensatory damages award.

We, therefore, vacate the judgment and remand for trial in accordance with the foregoing.

Judgment vacated. Case remanded. Jurisdiction relinquished.