**John B. GREEN, Jr., Appellant,**

v.

**John F. MIZNER, Esq., MacDonald, Illig, Jones & Britton, Dennis Heindel, and Laurel Manufacturing, Inc., Appellees.**

Superior Court of Pennsylvania.

Argued Nov. 12, 1996.

Filed April 3, 1997.

---

Anthony S. Guido, Dubois, for appellant.

John P. Garhart, Erie, for Mizner and MacDonald, Illig, Jones & Britton, appellees.

James M. Horne, State College, for Heindel and Laurel Manufacturing, appellees.

Before HUDOCK, FORD ELLIOTT and HESTER, JJ.

HUDOCK, Judge:

This is an appeal from the order granting Appellees' preliminary objections in the nature of a demurrer and dismissing Appellant's complaint. We reverse and remand.

The facts may be summarized as follows: Appellant was a duly elected member of the Dubois City Council. On June 27, 1994, Appellant and three other council members passed a resolution accepting a proposal from Atlas Pressed Metals (Atlas) to purchase a 4.1 acre parcel owned by the city. In accepting Atlas's bid, council rejected a proposal by Appellee Laurel Manufacturing, Inc. (LMI). Thereafter, LMI, represented by Appellee MacDonald, Illig, Jones & Britton, filed an action in equity against the City of Dubois, Atlas, Appellant, and two other council members to enjoin the sale of the property. At the time LMI instituted the action, Appellant was a candidate for mayor of Dubois.

Just two weeks prior to the mayoral election, Appellee John F. Mizner, Esq. (Mizner) [1] sent a letter to the Attorney General of the Commonwealth of Pennsylvania requesting that the office investigate certain actions allegedly made by Appellant. According to the letter, Appellant, on his own and without proper authority, illegally retained the services of the law firm of Ferraraccio & Noble. The letter accused Appellant of violating criminal and civil statutes, thus questioning his personal and professional reputation. Mizner forwarded a copy of this letter to the Dubois Courier Express newspaper for publication. In addition, Appellee Dennis Heindel (Heindel), Chief Executive Officer of LMI, forwarded a copy of the letter to local radio stations. While neither the newspaper nor the radio stations published the letter verbatim, excerpts regarding the accusations made in the letter were subsequently published and quoted.

Appellant filed a defamation action against Appellees claiming Mizner's investigative request was nothing more than a negative campaign tactic employed to defeat him in the election. Appellant avers that Mizner's goal was to rescind the sale of the property to Atlas, and that Mizner believed he had a better chance of obtaining this goal if Appellant was not elected. Appellant also claims that both Mizner and Heindel knew that the accusations made in the letter to the Attorney General were false because the decision

1. Mizner is a member of Appellee firm Mac-    Donald, Illig, Jones & Britton.

to retain Ferraraccio & Noble in 1993 was not made unilaterally by Appellant. The crux of Appellant's complaint is that Appellees acted maliciously, hindering his campaign efforts with the result that he lost the election, injuring his reputation and directly causing personal anxiety and financial loss.

Appellees filed preliminary objections to Appellant's complaint in the nature of a demurrer. After hearing arguments, the trial court sustained the objections and dismissed the complaint on two grounds. The first was that Mizner's letter to the Attorney General was not capable of having a defamatory meaning because it consisted of opinions. The second was that Mizner's act of mailing the letter to the Attorney General was privileged, and therefore, not actionable. Thus, the court restricted Appellant's recourse to Mizner's act of mailing the letter to the newspaper and Heindel's act of mailing it to the radio stations. Deeming these actions *de minimis*, it concluded as a matter of law that Appellant had no cause of action.

Appellant raises the following two issues on appeal:

1. WHETHER [APPELLANT'S] COMPLAINT AS IT RELATES TO MIZNER'S OCTOBER 18, 1995 LETTER AND SUBSEQUENT PUBLICATIONS SUFFICIENTLY AVERS A CAUSE OF ACTION IN DEFAMATION.

2. WHETHER APPELLEES' STATEMENTS ARE PRIVILEGED COMMUNICATIONS PROTECTED BY THE FIRST AMENDMENT OF THE UNITED STATES CONSTITUTION AND/OR DEFAMATION LAWS OF PENNSYLVANIA.

Appellant's Brief at 2.

■ When reviewing the grant or denial of preliminary objections in the nature of a demurrer, we must regard the allegations in the appellant's complaint as true and accord him all the inferences reasonably deduced therefrom. *Snyder v. Speciality Glass Products, Inc.,* 441 Pa.Super. 613, , 658 A.2d 366, 368 (1995); *Al Hamilton Contracting Co. v. Cowder,* 434 Pa.Super. 491, , 644 A.2d 188, 190 (1994). Preliminary objections should only be sustained where it appears with certainty that the law permits no recovery under the allegations pleaded. *Al Hamilton Contracting Co.,* 644 A.2d at 190 (citing *Gallagher v. City of Philadelphia,* 142 Pa. Commw. 487, 491, 597 A.2d 747, 748 (1991)). When a doubt exists as to whether a demurrer should be sustained, this doubt should be resolved in favor of overruling it. *Snyder,* 658 A.2d at 368.

Before reaching the merits of Appellant's first issue, we note that the only communication we are asked to review is the letter authored by Mizner. Appellant has not challenged the written and oral reports stemming from the letter, nor has he instituted proceedings against the media based on their reports. With this in mind, we turn to Appellant's first issue regarding the propriety of the trial court's conclusion that the letter was not defamatory.

■ It is the function of the trial court to determine whether a challenged publication is capable of a defamatory meaning. *Maier v. Maretti,* 448 Pa.Super. 276, , 671 A.2d 701, 704 (1995); *Livingston v. Murray,* 417 Pa.Super. 202, , 612 A.2d 443, 446, *alloc. den.,* 533 Pa. 601, 617 A.2d 1275 (1992). When making such an assessment, the court must consider the effect of the entire article and the impression it would engender in the minds of the average reader among whom it is circulated. *Livingston,* 612 A.2d at 446; *Maier,* 671 A.2d at 705 (a critical factor to consider is the nature of the audience). A publication is defamatory if it tends to blacken a person's reputation or expose him to public hatred, contempt, or ridicule, or injure him in his business or profession. *Livingston,* 612 A.2d at 447. When communications tend to lower a person in the estimation of the community, deter third persons from associating with him, or adversely affect his fitness for the proper conduct of his lawful business or profession, they are deemed defamatory. *Id.* Accordingly, we must consider the content of the letter authored by Mizner, the audience to which it was presented, and the effect it may have had thereon.

The letter states the following:

The purpose of this letter is to request an investigation of a matter involving John B. Green who is a member of the DuBois

City Council. Recent actions by Mr. Green as a member of City Council appear to involve conduct which is contrary to the Third Class City Code and other provision [sic] of Pennsylvania law.

Specifically, we request an investigation of Mr. Green's retention of the law firm of Ferraraccio and Noble as Special Counsel for the City of DuBois without notifying other members of the DuBois City Council or without the passage of the necessary resolution by the DuBois City Council. We would request you to investigate: (1) whether it was illegal for Mr. Green to retain the law firm of Ferraraccio and Noble as Special Counsel for the City of DuBois; and if so (2) whether appropriate charges should be filed against Mr. Green.

**Mr. Green Illegally Retained A Private Law Firm To Serve As Special Counsel For The City Of DuBois Without Passage Of The Necessary Resolution Of The City Council.**

The City of DuBois is a Third Class City operating under a Home Rule Charter. The City of DuBois retains a City Solicitor and pays the Solicitor an annual retainer of $17,000. Toni Cherry is currently the City Solicitor and has been the City Solicitor since 1989.

Under the applicable provision of the Third Class City Code, only the DuBois City Council, not individual members, has the authority to retain special counsel. Specifically, the Third Class City Code provides that:

Council may, at its discretion, retain special counsel for particular proceedings or matters of the City and fix his compensation by resolution.

53 P.S. § 36610.

Patrick Nuzzo, the DuBois City Manager, testified under oath that the DuBois City Council never passed a resolution to retain the law firm of Ferraraccio and [Noble] as Special Counsel or to establish the law firm's compensation for services provided to the City of DuBois. According to Mr. Nuzzo, this matter was simply never raised at a DuBois City Council meeting.

However, beginning in February of 1993 and ending in approximately September of 1994, the City of DuBois paid the law firm of Ferraraccio and Noble of Clearfield close to $12,000 (at an hourly rate of $45.00 per hour). All of the legal work performed by Ferraraccio and Noble was legal work that could have and should have been performed by the City Solicitor as part of her responsibilities as the City Solicitor.

What is so amazing about this situation is that Mr. Green unilaterally and without knowledge of the other members of City Council retained the law firm of Ferraraccio and [Noble] as Special Council (sic) to the City and *never* brought this matter before the City Council for review or approval. It was all done by Mr. Green and Mr. Green only. In addition, our investigation has revealed that the law firm of Ferraraccio and Noble corresponded directly with Mr. Green, submitted the bills in Mr. Green's names (sic) directly to Mr. Green and did not interact with any other members of City Council.

We believe that this type of conduct warrants an investigation. Not only did Mr. Green violate the above-referenced statute, but his actions may also be a violation of 18 Pa.C.S.A. § 5101 if the actions constitute an obstruction or impairment of a governmental function as a breach of his official duty as a City Councilman.

Without question, Mr. Green's actions harmed the taxpayers of DuBois because retaining the private law firm of Ferraraccio and Noble as Special Counsel, Mr. Green wasted approximately $12,000 of the taxpayers (sic) money. This money was wasted because the City Solicitor could have performed these services as part of her responsibilities as the City Solicitor at no additional charge. Mr. Green has no legal right to retain Special Counsel for the City of DuBois unless the City Council passed the appropriate resolution. There is simply no legal justification for Mr. Green not seeking the approval of the DuBois City Council.

All of the statements set forth in this letter are supported by documentary evidence and/or the sworn deposition testimo-

ny of Patrick J. Nuzzo, the DuBois City Manager and are available to your office upon request. This evidence was obtained during discovery in the *Laurel Manufacturing, Inc. on behalf of the taxpayers of the City of DuBois v. The City of DuBois, John B. Green, John E. Dugan, Williams Lines, H.P.M. Industries, Inc. d/b/a/ Atlas Pressed Metals* in the Court of Common Pleas of Clearfield County, Pennsylvania, Civil Action Equity No. 95–12–EQU.

If the actions set forth above violate the laws of this Commonwealth, [then] we believe that an investigation should be instituted and appropriate action taken if necessary.

Thank you for your attention to this matter.

Very truly yours,

MacDONALD, ILLIG, JONES & BRITTON

s/ John F. Minzer

By John F. Mizner

■ In granting Appellees' demurrer, the trial court concluded that the letter, when read in its entirety, was not defamatory. Labeling it an expression of opinion, the trial court deemed the communication non-defamatory and non-actionable. Appellant claims that this conclusion is erroneous. According to Appellant, Pennsylvania law clearly states that if a challenged statement can be reasonably construed as defamatory, a complainant has established a prima facie case and is entitled to proceed to a jury on the issues raised. Thus, because the letter unequivocally states that Appellant acted illegally and in violation of criminal and civil statutes, Appellant claims that a jury should decide whether the statement is defamatory and what damages, if any, he suffered. Appellees' arguments rebutting Appellant's claim essentially echo the conclusions of the trial court; namely, that (1) Mizner's letter contained non-actionable statements of opinion and (2) even if the letter was defamatory, Mizner's actions are protected by privilege. We will first address the trial court's conclusion that the letter was a statement of opinions.

■ As indicated by the trial court, statements of opinion, without more, are not actionable. *Mathias v. Carpenter*, 402 Pa.Super. 358, , 587 A.2d 1, 2–3 (1991), *alloc. den.*, 529 Pa. 650, 602 A.2d 860 (1992). Communicated opinions are actionable, however, when they can be reasonably understood to imply the existence of undisclosed defamatory facts. *Mathias*, 587 A.2d at 3. Whether a particular statement is opinion or fact is a question of law for the trial court. *Id.* However, in cases where a plausible innocent interpretation of the communication coexists with an alternative defamatory interpretation, the issue must proceed to a jury. *Livingston, supra*, 612 A.2d at 446. To aid the court in its determination of whether something is strictly an opinion, Pennsylvania has adopted the Restatement (Second) of Torts. Section 566 states:

> A defamatory communication may consist of a statement in the form of an opinion but a statement of this nature is actionable only if it implies the allegation of undisclosed defamatory facts as the basis for the opinion.

Restatement (Second) of Torts § 566.

Comment (c) of section 566 clarifies the distinction between a non-actionable "pure" opinion, and a potentially actionable "mixed" opinion. It states:

> A simple expression of opinion based on disclosed or assumed nondefamatory facts is not itself sufficient for an action of defamation, no matter how unjustified and unreasonable the opinion may be or how derogatory it is. But an expression of opinion that is not based on disclosed or assumed facts and therefore implies that there are undisclosed facts on which the opinion is based, is treated differently. The difference lies in the effect upon the recipient of the communication. In the first case, the communication itself indicates to him that there is no defamatory factual statement. In the second, it does not, and if the recipient draws the reasonable conclusion that the derogatory opinion expressed in the comment must have been based on undisclosed defamatory facts, the defendant is subject to liability.

When the letter authored by Mizner is viewed in accordance with the above considerations, we are constrained to disagree with

the trial court. Unlike the trial court, we do not conclude that the letter is wholly comprised of opinion. To the contrary, we believe the following factual statements surpass mere expressions of opinion and imply the existence of undisclosed facts: (1) "[Appellant] **illegally** retained a private law firm to serve as special counsel for the City of DuBois without passage of the necessary resolution of the City Council".; (2) "**What is so amazing about this situation is that [Appellant] unilaterally and without knowledge of the other members of City Council**" retained a law firm as special counsel; (3) "**It was all done by [Appellant] and [Appellant] only.**"; (4) "[Appellant] wasted approximately $12,000.00 of the taxpayers money". The message conveyed to the average reader is clear. Mizner unequivocally states that Appellant, **acting alone and without council's consent and knowledge, illegally** retained legal services to the financial detriment of the taxpayers. Because the statements imply the existence of undisclosed facts, they are actionable. *See* Restatement (Second) of Torts § 566, comment (c). In addition to finding that the letter is not strictly comprised of opinions, we also find that the letter is capable of having two interpretations. Appellees argue that the letter is merely a plea for an investigation, while Appellant argues, and we concur, that when read by an average citizen the letter may engender negative feelings of hatred or contempt. Accordingly, because two interpretations exist, the question of whether the letter is defamatory should have been placed before a jury. *Livingston,* 612 A.2d at 446.

We now turn to the issue of privilege. As stated above, the trial court's second theory supporting its decision was that Mizner's act of mailing the letter to the Attorney General was privileged. Therefore, the court focused on Mizner's and Heindel's act of mailing the letter to the news media. Finding these actions *de minimis,* the court dismissed Appellant's complaint. In addition to finding the issue of privilege irrelevant for our purpose of reviewing the grant of a demurrer, we also deem the trial court's cursory analysis of the issue to be inaccurate.

Pennsylvania law affords absolute immunity for defamatory statements contained in pleadings if they are relevant to the proceedings in which they are made. *Oweida v. Tribune–Review Publishing Company,* 410 Pa.Super. 112, , 599 A.2d 230, 233 (1991), *alloc. den.,* 529 Pa. 670, 605 A.2d 334 (1992). However, statements made about the pleadings outside of the judicial proceedings are subject to a qualified privilege. *Oweida,* 599 A.2d at 234. A qualified privilege is not abused if the communication is accurate and complete, and not published solely for the purpose of causing harm to the person defamed. *Id.* An abuse of a conditional privilege occurs, however, when the publication is actuated by malice or negligence, is made for purpose other than that for which the privilege is given or to a person not reasonably believed to be necessary for the accomplishment of the purpose of the privilege. *Maier,* 671 A.2d at 706 (citing *Beckman v. Dunn,* 276 Pa.Super. 527, 419 A.2d 583 (1980)).

Appellees raised the use of conditional privilege in their preliminary objections, claiming that the privilege was not abused because the letter mailed to the media was an exact copy of the letter written to the Attorney General. They contend that because the copy was exact, the communication could not be deemed inaccurate. While we recognize the logic of this argument, it fails to acknowledge the bare allegations of Appellant's complaint. Appellant alleged that Appellees published the letter (via sending it to the media) with the knowledge that the contents thereof were false. Appellant also alleged that Appellees did so with malice or recklessness to blacken his reputation and destroy his chances of winning the mayoral election. Employing our standard of review, that is, accepting as true Appellant's pleadings and inferences drawn therefrom, we are constrained to conclude, at this juncture, that the complaint supports a conclusion that Appellees abused their conditional privilege.

Order reversed and case remanded for further proceedings. Jurisdiction relinquished.