Paul ROCKWELL, Plaintiff,

v.

ALLEGHENY HEALTH, EDUCATION & RESEARCH FOUNDATION and Gloria F. Donnelly, Defendants.

Civil Action No. 98–CV–2204.

United States District Court, E.D. Pennsylvania.

Sept. 10, 1998.

---

Salmanson & Falcao, LLC, Philadelphia, PA, for Plaintiff.

Gollatz, Griffin & Ewing, P.C., Philadelphia, PA, for Defendants.

## MEMORANDUM AND ORDER

JOYNER, District Judge.

Plaintiff, Paul Rockwell ("Plaintiff" or "Rockwell"), has brought this action against Defendants, Allegheny Health, Education and Research Foundation ("the Foundation"), under Count I for violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e), and Gloria F. Donnelly ("Defendant" or "Donnelly") under Count II for defamation pursuant to 42 Pa. Cons.Stat. § 8343. Before this Court is Defendant Donnelly's Motion to Dismiss Count II pursuant to Fed.R.Civ.P. 12(b)(6). For the following reasons, the motion is denied.

### Background

Plaintiff alleges the following facts. Plaintiff was employed by the Foundation on and off from March 1993 through March 7, 1997. His last assignment was as an administrative assistant in the School of Nursing. Plaintiff was the only male in a support staff position, and throughout his employment was treated differently than similarly situated female employees by, but not limited to, the support staff Manager and the Defendant, Dean of the school, Dr. Gloria F. Donnelly.

Plaintiff continually rejected sexual advances by the support staff Manager. As a result, the support staff Manager attempted to damage his reputation among co-employees and supervisors. In spite of these ef-

forts, his two direct supervisors gave him exceptional ratings for his job performance. They defused attempts by the support staff Manager to have the Plaintiff dismissed, making it clear that they viewed him as a valuable employee and would not support any allegations against him. It was at this time that the Defendant, Dr. Donnelly, was appointed as the new Dean.

After an initial period where the Defendant recognized Plaintiff's strong work performance, Plaintiff experienced several career setbacks, coinciding with a non-stop campaign by the support staff Manager to convince the Defendant to terminate him. For example, because of treatment for Hodgkin's Disease, Plaintiff occasionally missed work. Both the support staff Manager and the Defendant questioned these absences. His two direct Supervisors maintained that Plaintiff's record of attendance was justified. It followed that the Supervisors became increasingly subject to questioning, verbal attacks and retaliation for their support of Plaintiff. During this period, Plaintiff filed several internal complaints claiming he was the subject of discriminatory misconduct. Plaintiff also filed a complaint with Philadelphia Commission on Human Relations (PCHR). The Defendant ignored the concerns Plaintiff raised in his complaints.

During a meeting with Plaintiff's two direct Supervisors to discuss Plaintiff's complaint filed with the PCHR, the Defendant stated that Plaintiff was "sick" and "vindictive," implied that he was having an inappropriate affair with one of the Supervisors, and accused him of abusing his sick time and time off. The two direct Supervisors disputed the Defendant's assertions and one of them became so traumatized by the continual attacks that she took a leave of absence.

As a result of continued discrimination and retaliation against the Plaintiff with the specific intent of forcing his resignation, Plaintiff resigned from his employment with the Foundation.

## Discussion

### A. *Standards for Fed.R.Civ.P. 12(b)(6) Motions*

In considering a Fed.R.Civ.P. 12(b)(6) motion, the court must accept as true the facts alleged in the complaint and all reasonable inferences that can be drawn from those facts after construing them in the light most favorable to the non-movant. *Pearson v. Miller,* 988 F.Supp. 848, 852 (M.D.Pa.1997)(*citing Jordan v. Fox, Rothschild, O'Brien, and Frankel, Inc.,* 20 F.3d 1250, 1261 (3d Cir.1994)). Dismissal is limited to those instances where it is certain that no relief could be granted under any set of facts that could be proved. *Alexander v. Whitman,* 114 F.3d 1392, 1398 (3d Cir.1997).

### B. *Count II: Defamation*

■ To state a cause of action for defamation, a plaintiff has the burden of proving (1) the defamatory character of the communication; (2) its publication by the defendant; (3) its application to plaintiff; (4) the understanding by the recipient of its defamatory meaning; (5) the understanding by the recipient of it as intended to be applied to the plaintiff; (6) special harm resulting to the plaintiff from its publication; and (7) abuse of any conditional privilege. *Sabo v. Metropolitan Life Ins. Co.,* 137 F.3d 185, 196 (3d Cir.1998)(*citing* 42 Pa. Cons.Stat. § 8343).

#### 1. *Defamatory Character of Statement*

Plaintiff pleads that Defendant, Dr. Donnelly, stated that he was "sick," "vindictive," involved in an inappropriate sexual relationship with his supervisor, and abused sick time and time off. (Pl.'s Compl. at ¶ 45.) By this motion, Defendant asserts that the alleged statements are not capable of a defamatory meaning and therefore not actionable. (Def.'s Mot. Dismiss at 2.) Under a 42 Pa. Cons.Stat. § 8343 claim, a plaintiff must plead the defamatory character of the communication being alleged. *Sabo,* 137 F.3d at 196. "Whether a statement can reasonably be construed as defamatory is a question of law for the court to decide." *Lynch v. Borough of Ambler,* 1996 WL 283643, *6 (E.D.Pa.1996); *Weinstein v. Bullick,* 827 F.Supp. 1193, 1196 (E.D.Pa.1993).

■ The court must view the statements in context and determine whether they were maliciously published and tended to

blacken a person's reputation or to injure him in his business or profession. *Green v. Mizner*, 692 A.2d 169, 172 (Pa.Super.1997); *Baker v. Lafayette College*, 516 Pa. 291, 296, 532 A.2d 399, 402 (1987)(*citing Corabi v. Curtis Publishing Company*, 441 Pa. 432, 441, 273 A.2d 899, 904 (1971)). Under Pennsylvania law, the test to be applied in evaluating any statement is the effect the article is "fairly calculated to produce and the impression it would naturally engender in the minds of the average persons among whom it is intended to circulate." *Gutman v. Tico*, 1998 WL 306502, *6 (E.D.Pa.1998); *see also Wendler v. DePaul*, 346 Pa.Super. 479, 482, 499 A.2d 1101, 1103 (1985)(*citing Corabi*, 441 Pa. at 447, 273 A.2d 899).

The Defendant relies on *Kryeski v. Schott Glass Technologies, Inc.*, 426 Pa.Super. 105, 626 A.2d 595 (1993) and *Parano v. O'Connor*, 433 Pa.Super. 570, 641 A.2d 607 (1994) to show that the alleged statements, even if taken as true, are not capable of defamatory meaning. In *Kryeski*, 426 Pa.Super. at 117, 626 A.2d 595, the court found that the Defendant's statements that Plaintiff was "crazy" and "emotionally unstable" were not meant in the literal sense but were no more than vigorous epithets. However, the court's holding should be read narrowly to apply to statements implying a mental disorder in a hyperbolic manner.[1] In the present case, the alleged statements taken as a whole are not consistent with the types of expressions implying mental deficiency measured in *Kryeski*.

In *Parano*, 433 Pa.Super. at 574, 641 A.2d 607, the court held that statements that Plaintiff was "uncooperative" and "less than helpful" were not overly offensive and did not rise to the level of defamation. The statements in the present case were more derogatory on their face and were made from a superior to the supervisors of the Defendant, (Pl.'s Compl. at ¶ 45), while in *Parano*, the

statements were made between individuals involved in a business deal, 433 Pa.Super. at 573, 641 A.2d 607. In light of the circumstances, the statements in the instant case were potentially highly offensive to the Plaintiff and therefore beyond the line recognized by the *Parano* Court.

In *Wendler v. DePaul*, 346 Pa.Super. at 482, 499 A.2d 1101, the court ruled that negative statements made in the context of an employment-related report were not defamatory. *Id.* at 483, 499 A.2d 1101. While in *Wendler* the appellant's job performance was criticized, the statements were made in the context of appellee's position as supervisor and did not accuse the appellant of dishonesty or anything similar that would blacken his reputation or expose him to public hatred, contempt, or ridicule. *Id.* (*citing Beckman v. Dunn*, 276 Pa.Super. 527, 533, 419 A.2d 583, 586 (1980)). Rather, the report was an evaluation of an employment incident akin to opinion, which was supported by reference to facts of the incident. *Wendler*, 346 Pa.Super. at 480–81, 499 A.2d 1101.

In the present case, Dr. Donnelly and Rockwell's supervisors met with the purpose of reviewing the Plaintiff's complaint filed with the Philadelphia Commission on Human Relations, (Pl.'s Compl. at ¶ 43), rather than with the purpose of evaluating the Plaintiff's work relative to a particular incident or performance review as was done in *Wendler*, 346 Pa.Super. at 482, 499 A.2d 1101. Therefore, it is not clear whether the statements were made by Donnelly in her capacity as the Plaintiff's superior and in the context of evaluating his work performance. Furthermore, the Defendant's repeated assertions that Plaintiff abused time off, even though his Supervisor maintained that his time off was justified, (Pl.'s Compl. at ¶¶ 44–45), are accusatory, implying immoral and dishonest behavior. These assertions cross the line es-

---

1. The Court in *Kryeski*, 426 Pa.Super. at 117, 626 A.2d 595, referred to similar statements that had not been found to rise to the level of defamation: *See Pease v. International Union of Operating Engineers Local 150*, 208 Ill.App.3d 863, 870, 153 Ill.Dec. 656, 661, 567 N.E.2d 614, 619 (1991)(statement to press concerning the plaintiff: "He's dealing with half a deck, did you know that? I think he's crazy."; court stated

"Words that are mere name calling or found to be rhetorical hyperbole or employed only in a loose, figurative sense have been deemed nonactionable"); *Bratt v. International Business Machines Corp.*, 392 Mass. 508, 517, 467 N.E.2d 126, 133 (1984)(courts have refused to hold defamatory on face or defamatory at all an imputation of mental disorder which is made in an oblique or hyperbolic manner).

tablished in *Wendler.* 346 Pa.Super. at 483, 499 A.2d 1101.

■ Moreover, not all of Donnelly's statements, as expressions of opinion, are clearly founded on disclosed facts. A simple non-actionable expression of opinion occurs when a person expresses a comment as to another's conduct, qualifications or character after either stating the facts on which he bases his opinion or when both parties to the communication know the facts or assume their existence. *Wolgin v. Smith,* 1996 WL 745285, *3 (E.D.Pa.1996) (*citing* Restatement 2d Torts § 566, comment b). "Pure opinion" is based on disclosed facts and is non-actionable.[2] Opinion that is not based on disclosed facts is "mixed opinion," comprising factual statements that surpass mere expressions of opinion.[3] "Mixed opinion" implies the existence of undisclosed facts and is therefore actionable.[4]

■ The Defendant and Plaintiff's supervisors knew that Plaintiff filed internal and external complaints concerning the Defendant. (Pl.'s Compl. at ¶¶ 32–34, 39–42, 44–45). These disclosed facts are sufficient to characterize Defendant's statements that Plaintiff is "sick" and "vindictive" as expressions of non-actionable "pure opinion."[5] This is true no matter how derogatory or unreasonable the statements may be in regard to those facts. *See Wolgin,* 1996 WL 745285 at *3 (E.D.Pa.1996) (statements that plaintiff was a crook, cheated, and was not trustworthy were based on disclosed facts in context of a business dispute between the parties); *Beckman,* 276 Pa.Super. at 535–36, 419 A.2d 583 (plaintiff's continued efforts for nine years to appeal University's decision to discontinue her Ph.D. studies founded Defendant's statement of opinion that she would act by "hook or by crook" to have her situation officially re-reviewed); *Parano,* 433 Pa.Super. at 575, 641 A.2d 607 (statements that Plaintiff was adversarial, less than helpful, and uncooperative were non-actionable opinion because they were based on sufficient disclosed facts: Plaintiff would not return 21 telephone calls and was uncooperative in providing information the firm needed to formulate a proposal).

■ However, Defendant's suggestions that Plaintiff was having an inappropriate sexual relationship and abused time-off, (Pl.'s Compl. at ¶¶ 44–45), are expressions of actionable mixed opinion according to *Green,* 692 A.2d at 174. Defendant's statement that Plaintiff's supervisor's "libido was up, and she wanted to act on it," (Pl.'s Compl. at ¶ 45), implying that Plaintiff was engaged in an inappropriate sexual relationship, is not founded on any disclosed facts and suggests the presence of undisclosed immoral activity on the part of Plaintiff. Similarly, Donnelly's statements that Plaintiff had a pattern of taking off Mondays and Fridays to abuse his vacation time, (Pl.'s Compl. at ¶¶ 44), are also not founded on disclosed facts and imply undisclosed dishonest activity by the Plaintiff. *See Green,* 692 A.2d at 174 (conclusive factual statements declaring Plaintiff's activity as being illegal surpasses mere expression

---

**2.** *See Green v. Mizner,* 692 A.2d 169, 174 (Pa.Super.1997):

Pennsylvania has adopted the Restatement (Second) of Torts. Section 566 states:
A defamatory communication may consist of a statement in the form of an opinion but a statement of this nature is actionable only if it implies the allegation of undisclosed defamatory facts as the basis for the opinion. Restatement (Second) of Torts § 566.
Comment (c) of section 566 clarifies the distinction between a non-actionable "pure" opinion, and a potentially actionable "mixed" opinion. It states:
A simple expression of opinion based on disclosed or assumed nondefamatory facts is not itself sufficient for an action of defamation, no matter how unjustified and unreasonable the opinion may be or how derogatory it is. But

an expression of opinion that is not based on disclosed or assumed facts and therefore implies that there are undisclosed facts on which the opinion is based, is treated differently. The difference lies in the effect upon the recipient of the communication. In the first case, the communication itself indicates to him that there is no defamatory factual statement. In the second, it does not, and if the recipient draws the reasonable conclusion that the derogatory opinion expressed in the comment must have been based on undisclosed defamatory facts, the defendant is subject to liability.

**3.** *See supra* note 2.

**4.** *Id.*

**5.** *Id.*

of non-actionable opinion and therefore implies existence of undisclosed facts).

Based on the information before the court, the Supervisors were apt to draw the reasonable conclusion that the derogatory opinion expressed in the comment must have been based on undisclosed defamatory facts, making Defendant subject to liability in accordance with *Green*, 692 A.2d at 174.

### 2. *Understanding Statement to be Defamatory*

The Defendant asserts that even if the remarks were defamatory, they did not in fact deter the recipients from dealing with the Plaintiff and, therefore, his defamation claim must fail. (Def.'s Reply Br. at 2.) Under a 42 Pa. Cons.Stat. § 8343 claim, the plaintiff need only plead that the recipient of the alleged defamatory remarks understood their defamatory meaning. *Sabo*, 137 F.3d at 196. *See also Corabi v. Curtis Publishing Co.*, 441 Pa. 432, 442, 273 A.2d 899, 904 (1971) (it only must be determined first whether the communication is capable of a defamatory meaning, and second *whether it was so understood by the recipients*) (emphasis added); *Reichman v. Bureau of Affirmative Action*, 536 F.Supp. 1149, 1180 (M.D.Pa.1982)(*citing Corabi*, 441 Pa. at 442, 273 A.2d 899.)

In *Reichman*, the defendant was accused of defaming the plaintiff through a company memo. 536 F.Supp. at 1180. The reader of the memo, however, testified that he did not understand the statements as meaning to defame the plaintiff. *Id.* The court therefore ruled that the Plaintiff did not satisfy the burden of proof in this respect. *Id.*

■ *Reichman* is distinguishable from the present case because here it can be reasonably inferred from the pleadings that the Plaintiff's two direct Supervisors, privy to the defamatory statements, well understood their defamatory meaning. One of Plaintiff's direct Supervisors became so stressed as a result of the pressure put on her to drop her support of the Plaintiff, which in-part resulted from the defamatory remarks of the Defendant, that she took a leave of absence. (Pl.'s Compl. at ¶ 47.) Furthermore, the De-

fendant implied that the other direct Supervisor was involved in an inappropriate sexual relationship with the Plaintiff. *Id.* at ¶ 45. This was stated directly to that particular supervisor, as well as the other supervisor. *Id.* It is therefore reasonable to conclude that the recipients of the remarks understood their defamatory meaning as applied to the plaintiff, satisfying the rule set in *Corabi*, 441 Pa. at 442, 273 A.2d 899. Whether or not the statements in fact deterred the direct Supervisors from dealing with the Plaintiff is not determinative of this element of 42 Pa. Cons. Stat. § 8343. *Corabi*, 441 Pa. at 442, 273 A.2d 899.

### 3. *Special Harm from Defamatory Statement*

■ Although under a 42 Pa. Cons.Stat. § 8343 claim the plaintiff must plead special harm resulting from publication of defamatory remarks, *Sabo*, 137 F.3d at 196, a plaintiff in Pennsylvania need not prove actual harm to his reputation in order to recover, *Simms v. Exeter Architectural Products, Inc.*, 916 F.Supp. 432, 437 (M.D.Pa.1996). "The meaning of harm encompasses impairment of reputation and standing in the community, personal humiliation, or mental anguish or suffering." *Id.* (*quoting Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 350, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974)). "[The defamed party] may recover for any injury done to his reputation and for any other injury of which the defamation is the legal cause." *Simms*, 916 F.Supp. at 437 (*quoting Agriss v. Roadway Express, Inc.*, 334 Pa.Super. 295, 328, 483 A.2d 456, 473 (1984)).

> To be defamatory, it is not necessary that the communication *actually cause harm* to another's reputation or deter third persons from associating or dealing with him. Its character depends upon its general tendency to have such an effect. In a particular case it may not do so either (1) because the other's reputation is so hopelessly bad or (2) so unassailable that no words can affect it harmfully, or (3) because of the lack of credibility of the defamer[.]

Restatement of Torts § 559, comment d (1938)(emphasis added)(*cited in Valley Forge Plaza Assoc. v. Rosen Agency, Inc.*, 113 B.R.

892, 905 (1990) *reversed on other grounds by* 120 B.R. 789 (E.D.Pa.1990)); *Corabi*, 441 Pa. at 442, 273 A.2d 899.

■ In the instant case, if the Defendant's remarks did not actually harm the Plaintiff's reputation in the eyes of the Supervisors, it was because of the lack of credibility of the defamer and not because they did not understand the defamatory meaning of the statements. The Supervisors were continually subjected to pressure from the Defendant to drop their support of the Plaintiff. (Pl.'s Compl. at ¶¶ 43–45, 47.) The Supervisors disputed the Defendant's statements that the Plaintiff abused time off. *Id.* at ¶ 45, 273 A.2d 899. The Supervisors were also verbally attacked in a meeting for maintaining their support of the Plaintiff and were so traumatized that they consulted with the Foundation's legal department. *Id.* at ¶ 43, 273 A.2d 899.

It appears from the pleadings that any potential harm may have been defused because the Supervisors discredited the defamer, rather than their misunderstanding any defamatory meaning. Thus, at the very minimum, the statements produced personal humiliation, mental anguish and suffering sufficient to satisfy the harm element of 42 Pa. Cons.Stat. § 8343 according to *Simms*, 916 F.Supp. at 437.

### 4. *Conditional Privilege*

■ Defendant argues that even if the statements were defamatory, they are subject to a conditional privilege. Under a 42 Pa. Cons.Stat. § 8343 claim, liability does not reach individuals subject to conditional privilege, unless that privilege is abused. Communications are privileged when made on a proper occasion, from a proper motive, and in a proper manner. *Maier v. Maretti*, 448 Pa.Super. 276, 285, 671 A.2d 701, 705 (1995)(*citing Beckman*, 276 Pa.Super. at 527, 419 A.2d 583). A publication is conditionally privileged if the publisher reasonably believes that the recipient shares a common interest in the subject matter and is entitled to know. *Daywalt v. Montgomery Hospital*, 393 Pa.Super. 118, 123, 573 A.2d 1116, 1118 (1990) (*citing* Restatement of Torts (2d) § 596); *Maier*, 448 Pa.Super. at 285, 671

A.2d 701 (*citing Rankin v. Phillippe*, 206 Pa.Super. 27, 211 A.2d 56 (1965)). A conditional privilege is abused when the publication is actuated by malice or negligence or is not consistent with the interests related to the conditional privilege. *See Miketic v. Baron*, 450 Pa.Super. 91, 102, 675 A.2d 324, 329 (1996) (complaint alleges an abuse of privilege in a series of legal conclusions, and failed to demonstrate facts which would support a finding that the publication was a result of malice or improper purpose); *Guardian Life Ins. Co. of America v. American Guardian Life Assurance Co.*, 943 F.Supp. 509, 527 (E.D.Pa.1996) (in the context of a motion to dismiss, the pleadings must allege facts which, if believed, would allow a jury to conclude that the alleged defamer acted with malice).

■ In *Daywalt v. Montgomery Hosp.*, the court held that a supervisor's communication of her suspicions concerning plaintiff's alteration of her time card to the personnel director and payroll department was privileged. 393 Pa.Super. 118, 123, 573 A.2d 1116, 1118 (1990). The court stated this privilege applied to private communications among employers regarding discharge and discipline. *Id.* (*citing* Restatement of Torts (2d) § 604 comment c, paragraph 2). Further, the Plaintiff in *Daywalt* utterly failed to meet his burden to show abuse of privilege. *Id.* at 124, 573 A.2d 1116. The only evidence or allegation of abuse in the record was a vague statement in the complaint that the defendant "wickedly intended" to cause appellant harm. *Id.* The present case can be distinguished, however, in two ways. First, the circumstance of the Defendant's remarks involved discussion of Plaintiff's complaint, rather than discharge and discipline. The statements are, therefore, not clearly consistent with the interests related to a conditional privilege.

Second, Plaintiff has pled numerous facts demonstrating a systematic and continuous pattern of activity by Donnelly to harm his professional reputation that goes beyond the vague assertion of malice in *Daywalt*, 393 Pa.Super. at 124, 573 A.2d 1116. For example, the repeated assertions that Plaintiff abused his time-off regardless of his supervi-

sors insistence that his time-off was justified demonstrates disregard for the truthfulness of the statement. *See* (Pl.'s Compl. at ¶¶ 44–45); *see also Zerpol Corp. v. DMP Corp.*, 561 F.Supp. 404, 409 (E.D.Pa.1983) (listing as fourth element of trade libel claim that "the publisher either knows that the statement is false or acts in reckless disregard of its truth or falsity").

Accordingly, Donnelly's alleged statements to Plaintiff's direct supervisors were beyond the confines of any claims of privilege, and therefore Plaintiff has sufficiently pled facts to avoid dismissal pursuant to the conditional privilege element of 42 Pa. Cons.Stat. § 8343.

### C. *Conclusion*

An appropriate Order Follows.

### ORDER

AND NOW this day of September, 1998, upon consideration of Defendant, Gloria F. Donnelly's, Motion to Dismiss Count II of Plaintiff's Complaint and Plaintiff's response thereto, it is hereby ORDERED that, in accordance with the foregoing Memorandum, the Motion is DENIED.