# Peckham v. University of Pennsylvania

*Barton A. Haines,* for plaintiff.
*Alan D. Berkowitz* and *Linda S. Dwoskin,* for defendants.

FIELD, *J.,* February 3, 1999—Plaintiff, George J. Peckham M.D., and defendants, the University of Pennsylvania and Laurence E. Earley M.D., have filed cross-appeals from this court's denial of their post-trial motions following a jury verdict for the plaintiff. The defendants raise several issues on appeal including, inter alia, evidentiary issues, objections to the court's jury charge, whether the court erred in finding that the plaintiff was not a public figure, and whether this matter should have been submitted to the jury at all. Plaintiff raises two issues: whether nonsuits were properly entered as to certain defendants and whether the issue of punitive damages was properly withheld from the jury. For the following reasons, both motions were properly denied, and the judgment entered on the jury verdict of May 19, 1998 should be affirmed.

Trial commenced in this matter on May 4, 1998. The following evidence was presented. For over 20 years, plaintiff had been a member of the medical staff of Children's Hospital of Philadelphia (CHOP) and a faculty member of the medical school at the University of Pennsylvania, specializing in neonatology. In the summer of 1992 he began his role as coordinator of the Philadelphia-Kiev Partnership, an international medical program created and funded by the American International Health Alliance (AIHA). Three institutions were to participate in the program: The Hospital of the University of Pennsylvania (HUP), CHOP and Pennsylvania Hospital. The aim of the program was to improve maternal and child health in Kiev, and it was operated through the Office of International Medical Programs at the university. According to the plaintiff,

he was the reason the funding for the project came to the university. In contrast, witnesses for the university stated that the university was the lead institution and sub-grantee of funds received by the project.

Conflicts between plaintiff and others at the university surfaced shortly after the project's inception. Evidence was presented by university personnel that they believed Dr. Peckham was negotiating to move the project to Pennsylvania Hospital. On January 27, 1993, a meeting was held at HUP attended by all administrators and department heads involved in the project except Dr. Peckham, who had not been invited. At that meeting, it was decided that Dr. Peckham would be removed from his position as coordinator of the project and replaced by two staff members of HUP. At the same time, a draft of a letter was circulated among those attending the meeting. This letter contains the alleged defamation which constitutes the basis of this lawsuit. (Trial exhibit P-1, attached hereto as exhibit A.) This letter, dated January 29, 1993 and addressed to James P. Smith, executive director of AIHA, was sent by Laurence E. Earley M.D., senior associate dean for international medical programs at the university. It stated that because of "issues" which had been "recurrent over a period of months," it was "regrettably" concluded that Dr. Peckham should no longer be the coordinator of the Philadelphia-Kiev Partnership. All those attending the meeting were sent copies of the letter.

Although plaintiff's complaint contained several counts, including, inter alia, interference with prospective contract, wrongful discharge, intentional infliction of emotional distress, loss of consortium, conspiracy and defamation; all except the defamation claim were disposed by the court or by plaintiff's withdrawal prior to submission to the jury. Following nine days of tes-

timony and one and a half days of deliberation, the jury found Dr. Earley's letter of January 29, 1993 to be defamatory and awarded Dr. Peckham $2,500,000 in damages.

Defendants Earley and the university have preserved several issues on appeal. The threshold question raised is whether the court erred in finding that the letter was capable of a defamatory meaning. In all defamation cases, it is initially for the trial court to determine whether a challenged communication is capable of a defamatory meaning. *Green v. Mizner,* 692 A.2d 169, 172 (Pa. Super. 1997). When making this determination, the court must look at the communication as a whole, not merely at specific words or phrases. *Id.* How the entire communication would be interpreted by the intended audience must be considered as well as whether the statements expressed imply the existence of undisclosed defamatory facts. *Baker v. Lafayette College,* 516 Pa. 291, 296-97, 532 A.2d 399, 402 (1987). If there is any interpretation which could be construed as defamatory, the question must be sent to the jury. *Gordon v. Lancaster Osteopathic Hospital Association,* 340 Pa. Super. 253, 270, 489 A.2d 1364, 1374 (1985); cf. Restatement (Second) of Torts §573, comment (c) (1977).

The letter at issue here was sent to AIHA, the agency which received grant funds from the United States Agency for International Development (US AID) and disbursed them to the program administrators. It was circulated among all of the persons involved in the Philadelphia-Kiev program. One of those who received the letter was David P. McKee, program director for AIHA. He testified that his reaction to the letter's phrasing was that there must have been some sort of professional incompetence. (McKee, trial deposition at p.

61.) McKee further testified that the letter led him to believe that something happened in Philadelphia involving Dr. Peckham, and that, consequently, "Dr. Peckham's effectiveness in international health care was over." (McKee trial deposition at 90.)

Upon examination of the letter, it is clear that Dr. Earley referred to "issues," upon which he chose not to elaborate. The letter itself, was, therefore, capable of a defamatory interpretation based upon those undisclosed facts. Similarly, even though several people who read the letter said it did not affect their opinion of Dr. Peckham, Mr. McKee's testimony that he read the letter to imply something negative was a sufficient basis for the jury to have found that the letter was, indeed, defamatory.[1]

In a related argument, defendants argue that they are entitled to a new trial or judgment n.o.v. because there was no proof that the letter was false or that the defendants were negligent in sending the letter. As discussed above, since the letter was written in such a way as to imply the existence of undisclosed defamatory facts, it furnishes a sufficient basis from which the jury could have found Dr. Earley negligent.

The next error alleged by the defendants is that the wrong defamation standard was applied and that the court should have instructed the jury that Dr. Peckham was a "limited purpose public figure" for the purposes of the lawsuit, and therefore plaintiff had a higher burden

---

1. Defendants have also raised the issue of qualified privilege. They assert that Dr. Earley was allowed to comment on Dr. Peckham's job performance just as any employer would be allowed to comment on an employee's performance. However, since the defamation alleged here rests on the implication of undisclosed defamatory facts, such a privilege would be inapplicable, even if Dr. Peckham and Dr. Earley had been in an ordinary subordinate/supervisor relationship.

of proof than if he were a private citizen. In *Gertz v. Robert Welch Inc.,* 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974), the United States Supreme Court recognized two classifications of public figures. First there is the "all purpose" public figure, that is someone who has achieved such fame or notoriety in all contexts that everyone knows who he is. The second type is the "limited purpose" public figure, that is, someone who voluntarily injects himself or is drawn into a particular public controversy, giving rise to the alleged defamation. A public controversy is not merely something of interest to the public; it must be one being debated, publicly and having forseeable as well as substantial ramifications to the general public. *Rutt v. Bethlehems' Globe Publishing Co.,* 335 Pa. Super. 163, 484 A.2d 72 (1984). While undoubtedly important to the participating individuals and institutions, it is clear that Dr. Peckham's status as head of the Philadelphia-Kiev project or his removal from that position did not rise to the level of a "public controversy." Hence, the court correctly found that Dr. Peckham was not a limited purpose public figure.

Defendants next argue that they are entitled to judgment n.o.v., a new trial or remittitur because Dr. Peckham failed to prove any damages as a result of any defamation. The damages claimed and testified to were noneconomic such as the humiliation, pain and suffering, and damage to his reputation which resulted from the defamation. Dr. Peckham testified to all these items. The value placed on such harm by the jury may not be disturbed unless there is no support in the record. When reviewing a jury's verdict, the evidence must be viewed in the light most favorable to the verdict winner. *Boutte v. Seitchik,* 719 A.2d 319 (Pa. Super. 1998). A jury's determination is not to be disturbed as long as there is sufficient evidence on the record

to support it. *Fannin v. Cratty,* 331 Pa. Super. 326, 480 A.2d 1056 (1984). Here, plaintiff testified about how he suffered as a result of the defamation. Hence, the jury's award should not be disturbed.

Defendants raise three issues dealing with evidentiary rulings: first, that the court erred in excluding evidence regarding Dr. Peckham's history of alcoholism; second, that the court erred in excluding evidence regarding Dr. Peckham's employment removal as division chief in the neonatology department; and third, the court erred in permitting plaintiff's experts to testify. These will be discussed in turn.

Defendants sought to present evidence of Dr. Peckham's treatment for alcoholism in 1991, two years before the events at issue. They argued that his personal life and reputation had already suffered as a result thereof. However, there was no evidence that Dr. Peckham had any alcoholism-related problems at any time during his entire involvement with the Philadelphia-Kiev partnership. Hence any possible probative value was clearly outweighed by the prejudice which would have resulted. Because of the remoteness in time, Dr. Peckham's treatment was properly excluded.

Next, defendants argue that it was error to exclude evidence of Dr. Peckham's removal from a prior position at HUP. Specifically, the defendants sought to present a letter addressed to and the testimony of Dr. Richard Johnson, plaintiff's former supervisor at HUP. The date of the letter was September 20, 1989, and his testimony would have concerned the same time period. As above, the remoteness of the two events necessitated the exclusion of the evidence.

Defendants argue that the court erred in permitting the testimony of plaintiff's witnesses, Drs. Ramsden and Hochberg. Dr. Ella Ramsden was presented as both

a fact and an expert witness. During the period involved in this matter she was president of the university's chapter of the American Association of University Professors (AAUP) as well as a member of the joint committee to study the academic environment at the medical school. Defendants did not object to her testifying as fact witness. The only area in which the court permitted her to give opinion testimony was with regard to standard procedures for the removal of faculty from a funded project, such as the one here, and whether the procedure here was in accordance with such standard procedures. Given her position as AAUP president she was qualified to give such an opinion. No error occurred.

Mark Hochberg M.D. was presented as an expert to give his opinion as to how the January 29, 1993 letter to the AIHA would be received and interpreted by the grant-giving community. Dr. Hochberg's qualifications to give such an opinion were based on his extensive experience. He had been a grantee performing research as well as operating both private and government-sponsored programs. More recently, he was head of a large health care philanthropic organization which bestowed such grants. Dr. Hochberg went through the letter line by line and explained how he, as someone responsible for making grants would, upon reading such a letter, be suspect of Dr. Peckham and reluctant to give him any grant funds. This opinion was relevant and Dr. Hochberg was qualified to give it. No error occurred.

The final area in which defendants allege error concerns alleged prejudicial errors during opening and closing arguments. Defendants allege that it was error for the court to sustain plaintiff's objection to argument regarding Dr. Peckham's removal from his prior position at HUP, which occurred in 1989. (N.T. May 18, 1998,

at 106.) As discussed above, such events were too remote in time to be admitted. The preclusion of such references in closing argument was consistent with evidentiary rulings made during the trial, and thus proper.

Finally, defendants allege that the court erred in permitting plaintiff's counsel to refer in his arguments to defendants' "arrogance" and "unfairness." Such comments are permissible argument. The jury was adequately instructed both before and after the evidence that speeches by lawyers are not evidence. No error occurred.

Plaintiff's post-trial motion seeks relief in two areas. First, he argues that the court erred in granting nonsuits as to all the other defendants and in dismissing his conspiracy claims. Plaintiff argues that since all the other named defendants were present or represented at the January 27, 1993 meeting, at which the offending letter was reviewed, they all were liable as co-conspirators in the defamation. Mere acquiescence is not a sufficient act to constitute participation in the defamation. *Ertel v. Patriot-News Company,* 544 Pa. 93, 674 A.2d 1038 (1996), *cert. denied,* 117 S.Ct. 512, 136 L.Ed.2d 401 (1996). Since no other action was taken by any meeting attendees except Dr. Earley with regard to the defamation, none of the defendants other than Dr. Earley and the university, as the entity for which Dr. Earley was an agent, could be held liable for the defamation. Hence, the nonsuits as to the other defendants were properly entered and the conspiracy claim properly dismissed.

Finally, plaintiff seeks a new trial as to damages only on the basis that the court erred in dismissing his punitive damage claim. Whether to submit a claim for punitive damages to the jury is initially a question for the trial court. *Feld v. Merriam,* 506 Pa. 383, 485

A.2d 742 (1984). Mere negligence or carelessness, though sufficient to support an award of compensatory damages, is not enough. *Oweida v. Tribune-Review Publishing Co.,* 410 Pa. Super. 112, 137, 599 A.2d 230, 243 (1991). In order to support an award of punitive damages in a defamation case there must be evidence of behavior which is so outrageous so as to constitute actual malice. *Id.,* 410 Pa. Super. at 136, 599 A.2d at 242. Where, as here, the defamation rested not on false statements but on implications of undisclosed facts, the evidence did not rise to such a level as to support the submission of punitive damages to the jury.

For all of the above reasons, the post-trial motions of all parties were properly denied. The judgment as entered on August 5, 1998 on the jury's verdict should be affirmed.

---

### EXHIBIT "A"

University Of Pennsylvania
Medical Center

International Medical Programs

University of Pennsylvania School of Medicine
Hospital of the University of Pennsylvania

Suite 100, Edward J. Stemmler Hall
Philadelphia, PA 19104-6087
Tel: (215) 898-0283
Fax: (215) 573-2158

January 29, 1993

Mr. James P. Smith, Executive Director
American International Health Alliance
1212 New York Avenue NW, Suite 825
Washington, DC 20005

Dear Mr. Smith:

After multiple lengthy discussions and careful consideration by the Office of the Dean of the School of Medicine, the Department of Pediatrics and the Department of Obstetrics and Gynecology of the University of Pennsylvania we have regrettably reached the conclusion that Dr. George Peckham should no longer represent the University of Pennsylvania as coordinator of the Philadelphia Kiev Partnership. There is unanimous agreement among the leadership involved at the University of Pennsylvania Medical Center and Children's Hospital of Philadelphia that our potential for contributing to the success of the Kiev project can only be realized under new leadership. This is by no means a hasty decision, and the issues leading to this have been recurrent over a period of months.

Our departments of Pediatrics and Obstetrics and Gynecology, the Medical Center, Children's Hospital of Philadelphia, our School of Nursing, and other relevant components of the University of Pennsylvania remain committed and eager to implement a successful program for improving maternal and child health in Kiev. To this end we are prepared to recommend that Dr. William Beck, professor of Obstetrics and Gynecology at the Hospital of the University of Pennsylvania and long a member of the staff at Pennsylvania Hospital, and Dr. William Schwartz, professor of Pediatrics and director of the newborn service at the Hospital of the University of Pennsylvania, be named co-directors of the program, replacing the position of a single coordinator. We will be pleased to forward their curriculum vitae and, if you wish, they can meet with you or your designee, either in Washington or in Philadelphia. Also, I am prepared to meet with you and representatives

of USAID to affirm our commitment to the program and to discuss the need for the changes described above.

These intended changes have been discussed with Mr. Clifford Eldridge, president of Pennsylvania Hospital and Mr. Edmond Notebaert, president of Children's Hospital of Philadelphia and they both concur.

I look forward to your prompt response so that together we can take the necessary steps to move the Kiev program forward.

Sincerely,
/s/Laurence E. Earley M.D.
Senior Associate Dean

Copy: Mr. Eldridge
      Mr. Notebaert
      Dr. Ballard
      Dr. Burg
      Dr. Farmer
      Dr. Hougen
      Dr. Kelley
      Dr. Mennuti
      Dr. Schwartz