Louis DeMARY and Dorothy DeMary, Appellants,

v.

LATROBE PRINTING AND PUBLISHING COMPANY, a Pennsylvania Corporation, t/d/b/a The Latrobe Bulletin, Thomas Whiteman, Marie McCandless and Jeanette Wolff, Appellees.

Superior Court of Pennsylvania.

Argued Sept. 6, 2000.

Filed Nov. 9, 2000.

Emily Smarto, Greensburg, for appellants.

David G. Klaber, Pittsburgh, for appellees.

Before McEWEN, President Judge, CAVANAUGH, KELLY, JOHNSON, HUDOCK, ELLIOTT, JOYCE, MUSMANNO, and LALLY–GREEN, JJ.

JOHNSON, J.:

¶ 1 Louis DeMary and Dorothy DeMary [hereinafter collectively referred to as "the DeMarys"] appeal from the order sustaining preliminary objections filed by Latrobe Printing and Publishing, Inc., t/d/b/a/ the Latrobe Bulletin, Thomas Whiteman, Marie McCandless, and Jeanette Wolf [hereinafter collectively referred to as "the Bulletin"] to the DeMarys' twelve count amended complaint. The DeMarys argue that their amended complaint was sufficient to withstand the Bulletin's demurrers. For the following reasons, we reverse and remand.

¶ 2 On February 20, 1998, the DeMarys commenced an action for defamation against the Bulletin. The twenty-one count complaint averred various libel counts based on articles written and published by the Bulletin that concerned a workers' compensation hearing, public proceedings of the Derry Township Board of Supervisors (Board), and comments made by citizens while a Board meeting was in recess. At all relevant times, Louis DeMary was a member of the Board.

¶ 3 The Bulletin filed preliminary objections, and the trial court struck various counts of the original complaint. The court ordered the DeMarys to file a more specific pleading with respect to the remaining counts. The DeMarys then filed an amended complaint that contained twelve counts. The Bulletin again filed preliminary objections asserting the defense of the "fair report privilege" and claiming that the amended complaint failed to state a claim upon which relief could be granted. The record bears no indication that the DeMarys ever objected to the Bulletin's premature interjection of a substantive defense at this stage of the litigation. Following argument on the Bulletin's preliminary objections, the trial court found that the fair report privilege applied, sustained the Bulletin's preliminary objections and dismissed the amended complaint in its entirety with prejudice. The DeMarys then brought this appeal.

¶ 4 On appeal, the DeMarys argue that the trial court committed errors of law on four separate occasions when it determined that: (1) the Bulletin did not abuse the privilege by including embellishments, exaggerations and additions; (2) the fair report privilege applies to workers' compensation hearings; (3) the fair report privilege could not be defeated by showing that the defendant published the defamatory material solely for the purpose of causing harm to the person defamed; and (4) the fair report privilege applies to comments made by citizens while the Board

meeting was in recess. We shall address these questions in order.

¶ 5 When reviewing a trial court's order sustaining preliminary objections in the nature of a demurrer and dismissing a suit, our scope of review is plenary. *See Donahue v. Federal Express Corp.*, 753 A.2d 238, 241 (Pa.Super.2000).

> When reviewing an order granting preliminary objections in the nature of a demurrer, an appellate court applies the same standard employed by the trial court: **all material facts set forth in the complaint as well as all inferences reasonably deducible therefrom are admitted as true** for the purposes of review. The question presented by the demurrer is whether, on the facts averred, the law says with certainty that no recovery is possible.

*Juban v. Schermer,* 751 A.2d 1190, 1192 (Pa.Super.2000) (emphasis added) (quoting *Jackson v. Garland,* 424 Pa.Super. 378, 622 A.2d 969, 970 (1993)). Where affirmance of the trial court's order sustaining preliminary objections would result in the dismissal of an action, we may do so only when the case "is clear and free from doubt." *Donahue,* 753 A.2d at 241. "To be clear and free from doubt that dismissal is appropriate, it must appear with certainty that the law would not permit recovery by the plaintiff upon the facts averred. Any doubt should be resolved by a refusal to sustain the objections." *Id.* We review the trial court's decision for an abuse of discretion or an error of law. *See Ellenbogen v. P.N.C. Bank, N.A.,* 731 A.2d 175, 181 (Pa.Super.1999).

¶ 6 In this case, the Bulletin invoked the fair report privilege in its preliminary objections. A "privilege to defame is an affirmative defense which may not be decided on preliminary objections." *Gordon v. Lancaster Osteopathic Hospital Assoc. Inc.,* 340 Pa.Super. 253, 489 A.2d 1364, 1376 (1985). Normally, a trial court's scope of review in ruling upon preliminary objections in the nature of a demurrer is limited to a review of the factual

averments within the complaint to determine their legal sufficiency for stating a claim upon which relief may be granted. *See Donahue,* 753 A.2d at 241. However, "[w]here a party erroneously asserts substantive defenses in preliminary objections rather than to raise these defenses by answer or in new matter, the failure of the opposing party to file preliminary objections to the defective preliminary objections, raising the erroneous defenses, waives the procedural defect and allows the trial court to rule" on whether the affirmative defense defeats the claim against which the defense has been invoked. *Preiser v. Rosenzweig,* 418 Pa.Super. 341, 614 A.2d 303, 305 (1992). Accordingly, in the instant case, the trial court's scope of review effectively extended beyond the DeMarys' complaint to include a determination of whether, as a matter of law, the Bulletin's affirmative defense defeats the defamation claims set forth in the DeMarys' complaint. Although a trial court's scope of review properly encompasses consideration of an affirmative defense first when ruling upon a motion for judgment on the pleadings, the trial court's standard of review remains unchanged. Thus, while the court could properly consider the Bulletin's affirmative defense on preliminary objections due to the DeMarys' default, *see id.,* it was compelled to review the averments in the De-Marys' complaint solely for legal sufficiency of the claims asserted, accepting as true all well pled averments of fact. *See Juban,* 751 A.2d at 1192. *See also Emerich v. Philadelphia Center for Human Development, Inc.,* 554 Pa. 209, 720 A.2d 1032, 1034 n. 1 (1999) (stating that the "[p]rinciples applicable to judgment on the pleadings are the same as the principles applicable to a preliminary objection in the nature of a demurrer").

¶ 7 In the first issue presented for our review, the DeMarys argue that the trial court erred in determining that the Bulletin had not abused the privilege. The trial court concluded that the DeMar-

ys had "failed to plead sufficient facts which would result in a finding that the privilege was abused by the defendants." Trial Court Opinion (T.C.O.) at 7. In Pennsylvania, the fair report privilege protects the press from liability for the publication of defamatory material if the published material reports on an official action or proceeding. *See Sciandra v. Lynett,* 409 Pa. 595, 187 A.2d 586, 588 (1963); *Mosley v. Observer Pub. Co.,* 427 Pa.Super. 471, 629 A.2d 965, 967 (1993). No responsibility attaches so long as the account of the official action or proceeding is fair, accurate and complete, and is not published "solely for the purpose of causing harm to the person defamed." *Sciandra,* 187 A.2d at 589. *See also* RESTATEMENT (FIRST) OF TORTS § 611. "However, this qualified immunity is forfeited if the publisher steps out of the scope of the privilege or abuses the 'occasion.' This can be done by exaggerated additions, or embellishments to the account." *Id.* at 600, 187 A.2d 586. *See also Mosley,* 629 A.2d at 969.

¶ 8 In reviewing the DeMarys' complaint, the trial court was bound to consider as true "all the material facts set forth in the complaint as well as all inferences reasonably deducible therefrom." *Juban,* 751 A.2d at 1192. A review of the trial court opinion reveals that it did not adhere to this standard. Paragraphs 23, 30, 31, 34, 35, 68, and 94 of the DeMarys' complaint clearly set forth specific factual averments, which, if accepted as true, would establish that the Bulletin abused the fair report privilege. However, the trial court did not accept these factual averments as true. Instead, it "reviewed the articles in question and ... determined that [the Bulletin] did not embellish or exaggerate any of the matters addressed during the meeting in question and raised by the testimony in the workers' compensation case." T.C.O. at 4. In so doing, the trial court committed an error of law by going beyond the affirmative defense and the face of the complaint and concluding that the Bulletin had not embellished or exaggerated the matters sur-

rounding the workers' compensation case and the Board meeting. *See Preiser,* 614 A.2d at 305. This type of factual determination is to be made by the jury and, therefore, is clearly proscribed at this stage of the litigation. *See First Lehigh Bank v. Cowen,* 700 A.2d 498, 503 (Pa.Super.1997) (stating that "[w]hether the [fair report] privilege is abused is a question for the jury."). Therefore, we conclude that the trial court erred in sustaining the Bulletin's demurrers based on the DeMarys' failure to aver facts sufficient to establish abuse of the fair report privilege.

¶ 9 In the second issue presented for our review, the DeMarys argue that the trial court erred in determining that the fair report privilege applies to newspaper articles regarding workers' compensation hearings. After reviewing the DeMarys' argument on their second issue, we conclude that they advance two arguments in support of their assertion that the fair report privilege should not apply to newspaper articles regarding workers' compensation hearings: (1) the articles included "a narrative by the newspaper reporter concerning a general summary of the matters involved in the workers' compensation claim ... that did not arise from the testimony at the hearing[;]" and (2) the "underlying policy justification for applying the privilege has no bearing in the instant case." Brief for Appellants at 8–9. The first argument does not address the applicability of the privilege to reports regarding a workers' compensation hearing. Instead, it posits that the Bulletin may not avail itself of the privilege in this case because the article contained a narrative that relayed information not revealed at the hearing. This argument is material only to determining whether the Bulletin abused the fair report privilege by including a narrative that constituted an "exaggerated addition" or "embellishment" to the account of what occurred at the hearing. *See Sciandra,* 187 A.2d at 589. As we have already decided that the trial court erred in finding that the Bulletin had

not abused the fair report privilege, we need not address this argument further.

¶ 10 In their second argument in support of the second issue, the DeMarys argue that the public interest rationale for the fair report privilege is not furthered by its application to workers' compensation hearings because "it would be incomprehensible to believe that citizens have an interest in the outcome of [these hearings]." Brief for Appellants at 9. The DeMarys do not support this argument with any citation to pertinent legal authority, and we are unconvinced by this bald assertion. The DeMarys are correct in noting that the public's interest in being fully informed of official proceedings or reports is one of the rationales for the protection afforded the press by the fair report privilege. *See Mosley,* 629 A.2d at 968. However, the DeMarys do not articulate why there is a purportedly diminished public interest in workers' compensation hearings. Clearly, these governmental proceedings that mirror the application of a statutory safety net for injured workers throughout the Commonwealth are of public importance. These hearings are the seeds of the substantive case law that impacts upon the thousands of our Commonwealth's citizens that are affected by workers' compensation laws. Thus, we conclude that because a workers' compensation hearing constitutes a governmental proceeding, the fair report privilege applies to an article that reports thereon. Therefore, the DeMarys' second issue is without merit.

¶ 11 In the third issue presented for review, the DeMarys argue that the trial court erred when it determined that they could not defeat the fair report privilege by showing that the Bulletin published the articles solely for the purpose of causing harm to Louis DeMary. In *Sciandra,* our Supreme Court stated that the fair report privilege "is lost if the defamatory material is published solely for the purpose of causing harm to the person defamed." 187 A.2d at 589 (citing to the RESTATEMENT

(FIRST) OF TORTS § 611). In the context of defamation cases, the type of malice that refers to a defendant's ill will towards a plaintiff is referred to as "common law malice." *See Geyer v. Steinborn*, 351 Pa.Super. 536, 506 A.2d 901, 915 (1986) (stating that " 'common law malice' refers to the defendant's attitude towards the plaintiff whereas actual malice as defined in *New York Times v. Sullivan* refers to the defendant's attitude towards the truth"); *Cantrell v. Forest City Publ'g Co.*, 419 U.S. 245, 252, 95 S.Ct. 465, 42 L.Ed.2d 419 (1974); *Pierce v. Capital Cities Communications*, 576 F.2d 495, 506 (3rd Cir. 1978). In their complaint, the DeMarys allege that the Bulletin published the articles solely for the purpose of causing harm to Louis DeMary and, therefore, it may not avail itself of the fair report privilege. However, the Bulletin argues that because the fair report privilege may be lost upon a showing of common law malice rather than actual malice, the privilege is constitutionally infirm in light of the U.S. Supreme Court's decision in *New York Times v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964) (holding that the First Amendment requires a showing of actual malice for a public figure to recover damages in a defamation action). The trial court accepted this argument and concluded that it would not allow the DeMarys to defeat the privilege by asserting that the Bulletin published the articles solely for the purpose of causing harm to Louis DeMary. T.C.O. at 6. For the following reasons, we conclude that the trial court committed an error of law in not applying the common law malice exception to the fair report privilege.

■ ¶ 12 As mandated by the U.S. Supreme Court's holding in *Sullivan*, to establish a prima facie case for defamation a public figure must show actual malice; i.e. that the defendant knew that the statement was false or acted with reckless disregard as to whether it was false or not. *See Ertel*, 674 A.2d at 1041; *Tucker v. Philadelphia Daily News*, 757 A.2d 938,

945 (Pa.Super.2000); *Merriweather v. Philadelphia Newspapers, Inc.*, 453 Pa.Super. 464, 684 A.2d 137, 140 (1996). Thus, in every defamation action brought by a public figure, the plaintiff must first show actual malice in order to establish the liability of the defendant. Accordingly, a defendant newspaper need not resort to the protection of the fair report privilege until the plaintiff has made out a prima facie case of defamation by showing that the newspaper acted with actual malice. If, however, a public figure succeeds in establishing a prima facie case of defamation against a newspaper, the newspaper may invoke the fair report privilege if the matters published were a report of an official act or proceeding. *See Sciandra*, 187 A.2d at 588; *Mosley*, 629 A.2d at 967. Thus, in a defamation action by a plaintiff public figure against a defendant newspaper, the fair report privilege is not implicated until the plaintiff has met his or her constitutionally mandated burden in showing that the newspaper acted with actual malice.

■ ¶ 13 Nevertheless, the Bulletin argues that loss of the fair report privilege upon a showing of common law malice is somehow unconstitutional. As stated above, a showing of actual malice is the minimum level of federal constitutional protection afforded a defendant in a defamation action by a public figure. Loss of the fair report privilege upon a showing of common law malice does not diminish or violate this floor of protection because the privilege is an additional layer of protection provided to the press by the common law of our Commonwealth. *See Sciandra*, 187 A.2d at 588–89. Nor are we convinced that common law malice and actual malice, in the context of defamation cases, represent different levels of proof along the same continuum. Actual malice focuses on the defendant's attitude towards the truth, whereas common law malice focuses on a defendant's attitude towards the plaintiff. *See Geyer*, 506 A.2d at 915. Therefore, we disagree with the Bulletin's assertion that

a showing of common law malice to defeat the privilege allows a plaintiff public figure to succeed in a defamation action by meeting a lower threshold of proof than that constitutionally mandated by the Court in *Sullivan.* We conclude that the plaintiff actually has the burden of showing two types of malice. First, in order to make out a prima facie case the plaintiff must show that the newspaper acted with actual malice towards the truthfulness of the statement. Second, in order to defeat the fair report privilege once it has been properly raised, the plaintiff must show that the defendant was motivated by ill will towards the plaintiff. In this case, the court concluded that it would not allow the DeMarys to defeat the privilege by showing that the Bulletin published the articles solely for the purpose of causing harm to Louis DeMary. Because, as we have discussed, this form of malice remains an exception to the fair report privilege under the law of our Commonwealth, the trial court erred as a matter of law.

¶ 14 In the final issue presented for our review, the DeMarys argue that the trial court erred in determining that the fair report privilege applied to an article that reported on a statement made by a citizen while the Board meeting was in recess.

> The burden is upon the defendant in the first instance to establish the existence of a privileged occasion. It is then a matter for the trial court to determine whether the occasion upon which the defendant published the defamatory matter gives rise to the privilege.

*Oweida v. Tribune–Review Pub. Co.,* 410 Pa.Super. 112, 599 A.2d 230, 235 (1991) (citations and quotation marks omitted). In paragraph 100(b) of their complaint, the DeMarys aver that the Bulletin published an article that included a report of a defamatory statement made by a citizen forty-five minutes after the Board meeting adjourned. The trial court concluded, without any reference or citation to the pleadings, that a statement made during a spontaneous congregation of citizens during a recess of the Board meeting was nonetheless subject to the privilege. Ostensibly, the court relied on the text of the Bulletin's article that characterized the circumstances surrounding the statement as a "well-organized meeting." However, reference to the Bulletin's potentially self-serving article is wholly insufficient to support the trial court's conclusion that the Bulletin carried its burden to show that the privilege was applicable to a statement made while the Board meeting was in recess. *Cf. Curran v. Philadelphia Newspapers, Inc.,* 497 Pa. 163, 439 A.2d 652 (1982) (concluding that a newspaper defendant in a defamation action may not prevail in its motion for summary judgment based on the testimonial affidavits of its own reporters). The Bulletin fails to direct us to any place in its pleadings that alleges that the statement was made during anything but a recess of the Board meeting. Consequently, we find no substantiation for the court's conclusion that the remarks were uttered at any sort of meeting. Therefore, the trial court erred in concluding that the Bulletin had met its burden in showing that the fair report privilege applied to the instant statement.

¶ 15 For all the foregoing reasons, we conclude that the trial court erred in dismissing the defamation counts in the DeMarys' complaint, and all counts that are derivative of the defamation counts.

¶ 16 · Order REVERSED. Case REMANDED for further proceedings not inconsistent with this Opinion. Jurisdiction RELINQUISHED.

¶ 17 KELLY, J., concurs in the result.