**PELLEGRINO FOOD PRODUCTS CO., INC. and Anthony J. Pellegrino, Sr., an Individual, Appellants**

v.

**THE VALLEY VOICE, Sue Curtin, an Individual, Tom Curtin, an Individual, Appellees**

and

**PELLEGRINO FOOD PRODUCTS CO., INC. and Anthony J. Pellegrino, Sr., an Individual, Appellants.**

v.

**Susan R. CURTIN, d/b/a Valley Publishing Company, Appellees.**

Superior Court of Pennsylvania.

Argued Feb. 8, 2005.

Filed May 23, 2005.

Jason C. Tetlow, Pittsburgh, for appellant.

Barbara C. Litten, Tionesta, for appellees.

Before: DEL SOLE, P.J., JOYCE and TAMILIA, JJ.

OPINION BY DEL SOLE, P.J.:

¶ 1 This is an appeal from an order granting Appellees' Petition for Award of Attorney's Fees filed pursuant to 42 Pa. C.S.A. § 2503(9). The award was based on the trial court's conclusion that Appellants' earlier conduct in bringing two actions against Appellees was vexatious. Our review of the matter does not support the trial court's conclusion, and we reverse its order and vacate its award.

¶ 2 The grant of Appellees' request for attorney fees was made after two suits were filed by Appellants Pellegrino Food Products and its C.E.O. Anthony Pellegrino, Sr. alleging they had been defamed in articles published in the local paper, The Valley Voice, which was owned and operated by Appellee Susan R. Curtin.[1] The trial court found that Appellants' later voluntary discontinuance of these actions, and its failure to produce evidence to substantiate its claim of damages, demonstrated that the actions were brought without sufficient grounds in either law or fact and with the sole purpose of causing annoyance, and thus were vexatious.

¶ 3 At issue were statements made in a column which reported on a meeting of the Mead Township Supervisors. Challenged

---

1. Susan Curtin's husband, Tom Curtin, was also named as a defendant.

were the statements that "Pellegrino Foods added a loading dock to its facility on Fullerton Road without benefit of a building permit," and "[b]ecause of the installation of the illegal structure the cost of the sewage line installation on Fullerton Road was more difficult and expensive." Appellants claimed that these statements were made without investigating the ownership of the property and an investigation would have revealed that neither Anthony Pellegrino nor Pellegrino Foods owns the property; rather, it is owned by Thomas and Sally Pellegrino.

¶ 4 Appellants further challenged the following published statement: "Pellegrino has been notified of the infractions and has responded with the statement, 'Prove it!'" Appellants claimed that this statement was an embellishment made by Mrs. Curtin.

¶ 5 Following the filing of Appellants' first action, Appellees answered and in new matter raised the defense of fair comment and privilege. A summary judgment motion was later filed, but before it was resolved Appellants voluntarily discontinued their case. A second complaint was filed shortly thereafter. It named only Susan R. Curtin, d/b/a Valley Publishing Company as a defendant and in addition to a claim of libel, Appellants added additional causes of action for intentional infliction of emotional distress and false light/invasion of privacy. These additional causes of action were stricken by the trial court following the filing of preliminary objections. Interrogatories and a Request of Production of Documents were served on Appellants. When they failed to timely respond, Mrs. Curtin filed a motion to compel. A response was then filed, but Mrs. Curtin, alleging it was incomplete, filed a second motion to compel. Before

argument was held on the motions, Appellants filed a praecipe for discontinuance of the matter and it was discontinued with prejudice.[2] Appellees' petition for the award of attorney fees followed.

¶ 6 Appellees' petition sought fees under 42 Pa.C.S.A. § 2503(9). It provides:

The following participants shall be entitled to a reasonable counsel fee as part of the taxable costs of the matter:

. . .

(9) Any participant who is awarded counsel fees because the conduct of another party in commencing the matter or otherwise was arbitrary, vexatious or in bad faith.

The trial court in this case ruled that Appellants did not institute the underlying actions in an arbitrary manner or in bad faith; however, it did find Appellants' conduct was vexatious.

■ ¶ 7 A suit is vexatious so as to support an award of attorney fees if it is filed without sufficient legal or factual grounds and if the suit was served with the sole purpose of causing annoyance. *Berg v. Georgetown Builders, Inc.*, 822 A.2d 810 (Pa.Super.2003). The underlying suit filed by Appellants sought damages as a result of what they alleged were defamatory statements contained in Appellees' published newspaper article.

■ ¶ 8 "Libel is the malicious publication of printed or written matter which tends to blacken a person's reputation and expose him to public hatred, contempt or ridicule." *Tucker v. Philadelphia Daily News*, 577 Pa. 598, 848 A.2d 113, 124 (2004) (quoting *Schnabel v. Meredith*, 378 Pa. 609, 107 A.2d 860, 862 (1954)). A communication is defamatory if it tends to

2. Appellants allege in their brief that they unilaterally decided to withdraw the case based on the fact that Mrs. Curtin did not have insurance and they did not wish to expose her personal assets. Appellants' Brief at 6.

harm the reputation of another as to lower that person in the estimation of the community or to deter third persons from associating or dealing with that person. *Maier v. Maretti,* 448 Pa.Super. 276, 671 A.2d 701, 704 (1995). A communication is also defamatory if it ascribes to another conduct, character or a condition that would adversely affect that person's fitness for the proper conduct of their business, trade or profession. *Constantino v. University of Pittsburgh,* 766 A.2d 1265, 1270 (Pa.Super.2001). In an action for defamation, a "plaintiff must prove: (1) the defamatory character of the communication; (2) publication by the defendant; (3) its application to the plaintiff; (4) understanding by the recipient of its defamatory meaning; (5) understanding by the recipient of it as intended to be applied to plaintiff; (6) special harm to the plaintiff; and (7) abuse of a conditionally privileged occasion." *Maier,* 671 A.2d at 704.

¶ 9 In Pennsylvania, the fair report privilege protects the press from liability for the publication of defamatory material if the published material constitutes a fair and accurate report of an official governmental action or proceeding. *DeMary v. Latrobe Printing & Publishing Co.,* 762 A.2d 758, 762 (Pa.Super.2000). This qualified immunity will be forfeited whenever the publisher steps out of the scope of the privilege by making exaggerated additions, or embellishments to the account. *Id.*

¶ 10 In this instance, Appellants' claim was based on a published article which covered an official local governmental proceeding. Appellants alleged, however, that the article contained inaccuracies, in that it reported Appellants were the persons responsible for failing to procure a proper permit before building a loading dock onto a building and that this action caused increased sewage line charges for the adjacent roadway. Appellants assert

that they were not owners of the property in question and that Appellees were negligent in not ascertaining the name of the correct owner of the property before publishing the article.

¶ 11 Appellants also point to the statement in the article which provides that "Pellegrino" was notified of the infraction, and responded "with the statement, 'Prove it!' " Appellants claim no such statement could be attributed to them.

¶ 12 With regard to these particular statements the trial court found that they were written by Mrs. Curtin based on what she knew to be the truth from what she heard at the meeting and from questioning of the supervisors. Appellees in their brief also contend that Mrs. Curtin published the articles only after verifying the facts of the articles with the Mead Township Supervisors and the township's solicitor. Appellees' Brief at 7. However, Mrs. Curtin's own deposition testimony belies this fact. Regarding ownership of the building, Mrs. Curtain repeatedly stated that during the meeting in question and in her later discussions it was only referred to as the "Pellegrino building." Deposition of Susan Curtin, 2/13/02, at 22. Mrs. Curtin also acknowledged that two of the supervisors told her "it was the Pellegrino building and it was utilized by Pellegrino Foods." *Id.* at 23. Thus, contrary to Appellees' assertions and the trial court's findings, Mrs. Curtin was never told that Pellegrino Foods was the party responsible for adding an unauthorized loading dock to its property.

¶ 13 Mrs. Curtin was also questioned in her deposition about the quotation contained in her article in which "Pellegrino" responded with "the statement," "Prove it!" when questioned about the matter. Mrs. Curtin acknowledged that she was told by supervisors who attended the meeting:

They noted at the end of the hearing that they were found in violation of the two items that I stated in this article and the attitude was: Prove it to us.

Mrs. Curtin was further questioned:

Q. Just so I am clear, that was the general attitude to whoever the representative was at that-

A. Correct.

Q. You don't know whether it was a specific quote?

A. No.

*Id.* at 28–29.

¶ 14 Thus, contrary to Appellees' contentions and the trial court's findings, it cannot be found that Mrs. Curtin published her article based on information she knew to be true. She acknowledged that the building was only referred to at the meeting as the "Pellegrino building" which was used by Pellegrino Foods, yet she wrote that "Pellegrino Foods" added the loading dock to its facility without a proper permit. A simple check of ownership would have clarified this error. Even more glaring, however, is Mrs. Curtin's acknowledgment that the quote she attributed to a Pellegrino official was never uttered. Rather, Mrs. Curtin was told about a general "attitude" which was conveyed.

¶ 15 Given Mrs. Curtin's inaccuracies and clear embellishments of the events which occurred at the meeting, it cannot be said that Appellants were vexatious in bringing suit against Appellees. The published article was designed to lower Appellants' reputation in the estimation of the community by informing others that they acted without proper authority, causing the community to incur additional sewage charges. Also harmful to Appellants' reputation was the "Prove it!" remark attributed to them, which could be viewed as a demonstration of Appellants' callus and in-

different attitude when confronted about the problem.

¶ 16 Although the ultimate success of the withdrawn suit will remain uncertain, there are no grounds to conclude that Appellants did not reasonably believe their claim was valid. *See Santilo v. Robinson,* 383 Pa.Super. 604, 557 A.2d 416 (1989). Further, we find it inconsequential to a ruling on this matter that Appellants failed to establish evidence of their damages. Private persons, such as Appellants, may recover for "impairment of reputation and standing in the community, personal humiliation, and mental anguish and suffering" and there "need be no evidence which assigns an actual dollar value to the injury." *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 350, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974). Appellants would have been entitled to recover for such injuries had their suit proved successful, and may also have sought mere nominal damages. *See Carter v. The May Dept. Store Co.,* 853 A.2d 1037 (Pa.Super.2004) (finding nominal damages available in various cases including invasion of privacy and false light-invasion of privacy cases.)

¶ 17 Accordingly, we find no support for the trial court's conclusion that Appellants brought their underlying suit without basis in law and fact and for the sole purpose of causing annoyance.

¶ 18 Order reversed. Award vacated. Jurisdiction relinquished.

¶ 19 JOYCE, J. files a dissenting opinion.

DISSENTING OPINION BY JOYCE, J.:

¶ 1 I disagree with the Majority's conclusion that the trial court abused its discretion in awarding attorney's fees to Appellees. Accordingly, I respectfully dissent.

¶ 2 Our standard of review of awards of attorney's fees is well-settled. "Whether to award attorneys' fees and costs incurred in bringing an action are within the discretion of the trial court, and we will not reverse a trial court's decision on the matter in the absence of a palpable abuse of discretion." *Thunberg v. Strause*, 545 Pa. 607, 682 A.2d 295, 302 (1996) (citation omitted).

> An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or [the judgment is] the result of partiality, prejudice, bias or ill-will, as shown by the evidence of record, discretion is abused. We emphasize that an abuse of discretion may not be found merely because the appellate court might have reached a different conclusion, but requires a showing of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support as to be clearly erroneous.

*Carter v. May Dept. Store Co.*, 853 A.2d 1037, 1040 (Pa.Super.2004) (emphasis added).

¶ 3 It is my opinion that the trial court did not abuse its discretion in determining that attorney's fees should be awarded because Appellants' conduct in filing the suit was vexatious. It is undisputed that Appellants were on notice that Appellees were asserting the fair report privilege prior to filing the first and second law suits.

> In Pennsylvania, the fair report privilege protects the press from liability for the publication of defamatory material if the published material reports on an official action or proceeding. *See Sciandra v. Lynett*, 409 Pa. 595, 187 A.2d 586, 588 (1963); *Mosley v. Observer Pub. Co.*, 427 Pa.Super. 471, 629 A.2d 965, 967 (1993). No responsibility attaches so long as the account of the official action or proceeding is fair, accurate and complete, and is not published "solely for the purpose of causing harm to the person defamed." *Sciandra*, 187 A.2d at 589. See also RESTATEMENT (FIRST) OF TORTS § 611. "However, this qualified immunity is forfeited if the publisher steps out of the scope of the privilege or abuses the 'occasion.' This can be done by exaggerated additions, or embellishments to the account." *Id.* at 600, 187 A.2d 586. *See also Mosley*, 629 A.2d at 969.

*DeMary v. Latrobe Printing and Publishing Co.*, 762 A.2d 758, 763 (Pa.Super.2000).

¶ 4 In this case, the fair report privilege was applicable. Mrs. Curtin's articles reported on official proceedings, the meetings of the Mead Township Supervisors. The information contained in the articles was an account of what happened at those meetings and, which viewed in whole, there is no evidence that the articles were unfair, inaccurate or incomplete. In fact, the evidence shows that Mrs. Curtin received the information directly from the Supervisors and from the Township's Solicitor and that those people had personal knowledge of the truth of the matter. Moreover, there is no evidence that the article was published "solely for the purpose of causing harm to the person defamed." *DeMary, supra.*

¶ 5 The Majority finds that the privilege was forfeited because Mrs. Curtin reported "inaccuracies and clear embellishments of the events which occurred at the meeting...." Majority opinion, at 8. The inaccuracy pertains to the fact that Mead Township's dispute was not with Pellegrino Foods, but rather with the owners of the Pellegrino building. The Pellegrino building is owned by Thomas and Sally Pellegrino. Thomas Pellegrino is the President

of Pellegrino Foods, however. Although the entities are closely entwined, technically the reference was inaccurate. Such an inaccuracy does not result in the forfeit of the fair report privilege, though, since it is neither an exaggerated addition nor an embellishment and errors do not negate the privilege. *DeMary, supra; Binder v. Triangle Publications, Inc.,* 442 Pa. 319, 275 A.2d 53, 56 (1971).

¶ 6 The Majority also concludes that the fair report privilege was not applicable because the article stated that "Pellegrino has been notified of the infractions and has responded with the statement 'Prove it!'" [3] As it turns out, this was not a direct quote from any Pellegrino official, but was the attitude of that person. I agree that the words "prove it" in quotation marks may lead some into thinking that it is a direct quote. While this is an unfortunate misstep, I do not agree that this singular gaffe is the sort of "embellishment" that removes the fair report privilege. The evidence of record established that Mrs. Curtin was told that the supervisors told her that when a Pellegrino official was found to be in violation of the zoning infractions

that the attitude was "prove it to us." Mrs. Curtin's version was not so far from the truth so to remove the fair report privilege. *Binder, supra* ("a qualified privilege is one that can be lost by abuse, such as overly embellishing an account of a proceeding") (emphasis added).

¶ 7 In my view, Appellees were protected by the fair report privilege. Appellants were advised of this factor prior to filing the first complaint but proceeded anyway, establishing that their conduct was vexatious. Moreover, there were a variety of other factors that support the trial court's finding of fact that Appellants' conduct in filing the complaint was vexatious. For example, Tom Curtin, Mrs. Curtin's husband, was named as a defendant in the first complaint despite the fact that he had no ownership in the Valley Voice nor did he write or otherwise participate in the writing of the articles.[4] Additionally, the fact that Appellees discontinued the first action five days before argument on summary judgment was scheduled and then filed the second action the day after argument was to be had was

---

3. There is a question as to the propriety of this Court making a finding of fact that the fair report privilege was abused. *See First Lehigh Bank v. Cowen,* 700 A.2d 498, 503 (Pa.Super.1997) (stating that "[w]hether the [fair report] privilege is abused is a question for the jury") Obviously, in this case, the trial court was required to assume this fact finding mission in order to decide the petition for attorney's fees. Since the fact finder determined that the Appellees did not forfeit the privilege, we are not in a position to reverse that conclusion unless it is clearly unsupported by the record. The very fact that members of this panel disagree on this factual determination supports the contention that we should defer to the trial court's finding.

4. The irony of this fact cannot be overlooked. Appellants claim that they felt entitled to file a law suit because conduct attributed to Pellegrino Foods should have been ascribed to the owners of the Pellegrino building and this fact

could have been easily ascertained by a simple check of ownership. Similarly, in their lawsuit, Appellants named Tom Curtin as a defendant, attributing conduct to him that would never withstand legal muster since he was only an occasional reporter for the Valley Voice and not the writer of the article or the owner, a fact that would have been ascertained by a simple check of ownership. It is fortunate for Appellants that Mr. Curtin did not file for attorney's fees along with his wife and Valley Voice. *See Thunberg v. Strause,* 545 Pa. 607, 682 A.2d 295, 302 (1996) ("the filing of a complaint merely to protect a client's possible claim against a party without any regard for the truth of the matters asserted therein may give rise to an award of attorney's fees where such allegations are later proven to have been made without a reasonable investigation or inquiry by the filing party.")

indicative of vexatious conduct. Also, Appellees filed a motion to compel interrogatories and argument was scheduled but again Appellants discontinued the case several days before argument. These discontinuances, which immediately preceded scheduled arguments, raise the inference that the suits had no merit. Regarding the last discontinuance, Appellants claim in their appellate brief that they "unilaterally decided to withdraw the case as they did not wish to expose Susan Curtin's personal assets." Appellants' brief, at 6. However, this claim is somewhat disingenuous since Appellants were on notice that the Valley Voice was not insured when Mrs. Curtin was deposed on February 13, 2002. The deposition occurred during the pendency of the first action. Notwithstanding this knowledge, Appellants proceeded with the first action, discontinued it, and then filed a second action. All of these factors led the trial court to properly conclude that Appellants' conduct in filing the law suits was vexatious so to support an award of attorney's fees.

¶ 8 Lastly, the trial court also based its decision to award counsel fees upon a finding that Appellees met their burden of proof relative thereto and also the underlying merits while Appellants did not. As to the defamation, Mrs. Curtin met her burden when she established that she reported on an official proceeding. The burden then shifted to Appellants to prove that Mrs. Curtin knew the statements were false or acted with reckless disregard for their truth and acted with malice or ill-will toward the Appellants. *DeMary, supra,* 762 A.2d at 764.

¶ 9 In regards to the attorney's fees, the trial court found that Appellants did not meet their burden of proof there either. The court applied the test proscribed in *In re Estate of Roos,* 305 Pa.Super. 86, 451 A.2d 255 (1982).

> [W]hen a litigant 'has the burden of proof' it means that he has made a claim which he cannot expect to have accepted until he offers proof sufficient to support it; and the least degree of proof any claimant can offer in order to obtain persuasion is proof which fairly outweighs the probative value of any proof offered against the claim. If the evidence does not fairly preponderate in favor of his claim he has failed to carry his burden of proof. Since proof by a 'preponderance of the evidence' is the lowest degree of proof recognized in the administration of justice, the evidence the burdened party offers does not become proof until it preponderates in evidentiary weight against the opposing evidence.

In this connection, we also have said that the burden of proof may shift during the course of the trial in the following manner:

> If he [the plaintiff] makes a prima facie case, and nothing is done by the other side to answer it 'the plaintiff wins.' . . . there are points at which the onus of proof shifts, . . . it is not a burden which rests forever on the person *on whim* [sic] *it is first cast, but as soon as he, in his turn, finds evidence which, prima facie, rebuts the evidence against which he is contending, the burden shifts until again there is evidence which satisfies the demand.* Now, that being so, the question as to onus of proof is only a rule for deciding on whom the obligation rests of going further, if he wishes to win. *Arco Metalscraft Co. v. Shaw,* 364 Pa. 39, 44, 70 A.2d 850, 853 (1950) (Emphasis added).

*Id.* at 256–257 (footnotes and quotation marks omitted).

¶ 10 The trial court determined that Appellees met their burden of proof in estab-

lishing a *prima facie* case for an award of attorney's fees. The court further found that Appellants only alleged (via the answer to the petition for attorney's fees) that their conduct was not vexatious without producing evidence in support thereof. Relying on *Roos,* wherein the defendants did not meet their burden of proof in defending the claim for attorney's fees by resting on the pleadings, the trial court found that Appellants did not meet their burden of proof. On the record, I do not find that the trial court abused its discretion in arriving at this conclusion.

¶ 11 For all of the foregoing reasons, I dissent.